JAMES R. NUGENT, PLAINTIFF, v. EDWARD J. GRASSMAN
ET AL., DEFENDANTS.

Submitted March 21, 1918—Decided June 6, 1918.

Occasional acts of trespass committed upon wild and uncultivated
lands, although extending over a period of twenty years, will not
give title by adverse possession, but if such acts occur with suffi-
cient frequency they amount to that continuity of possession
which is an essential ingredient of such a title. Whether, in
a given case, the acts of trespass, relied upon to establish title,
are of sufficient frequency to amount to a continuity of possession,
is necessarily a question of fact to be determined by the jury
under proper instructions from the court.

On plaintiff's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KALISCH.

For the rule, *George Holmes* and *George W. Anderson.*

*Contra, Arthur F. Egner.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This is an action of eject-
ment and involves title to a tract of land on the meadows ad-
jacent to Newark bay. It is conceded that the ownership of
five-sixths of the tract is in the plaintiff; the controversy con-
cerns the remaining one-sixth.

The proofs show that the paper title to this one-sixth is in
the defendants. The case of the plaintiff is that originally
the whole tract was held in common by several owners, and
that in 1865 the owners of five-sixths interest executed a
deed to one William F. Haines, purporting to convey the
absolute ownership of the whole tract; that Haines immedi-
ately entered into possession and exercised acts of ownership
over the land, from that time on until 1901, which were so

open, notorious, exclusive, continuous and uninterrupted as to vest in him at the end of twenty years from his original entry a title by adverse possession; and that this title has now devolved upon the plaintiff.

The trial of the case resulted in a verdict in favor of the defendants, and we are now asked to set it aside for three reasons—*first,* "because the verdict of the jury was contrary to the weight of the evidence;" *second,* "because the verdict of the jury was contrary to law;" *third,* "because the verdict of the jury was contrary to the charge of the trial court."

The plaintiff's claim of adverse possession was rested largely upon the testimony of his grantor, Mr. Haines. He testified that immediately upon the conveyance to him in 1865 he mowed the grass on this tract, and that he continued to do this every year until 1901, when the construction of a railroad embankment prevented him from further continuing this practice; that after that he visited the land from time to time and cleaned out the ditches around the tract. He further testified that some four or five years after taking possession of this land he put a stake at each corner of the tract; that those stakes were locust stakes, and that they remained in their original position up to the time of the trial. There was also proof that the present plaintiff had paid the taxes upon the premises for the past five or six years; in other words, ever since the conveyance to him by Haines.

On the other hand, there was testimony offered by the defendants tending to show that the stakes at the four corners of this tract are not locust, and that they very plainly have been there for only a comparatively short period of time, not over ten or fifteen years. The defendants' evidence also tended to contradict the story of Mr. Haines with relation to his having cut the salt hay on the tract annually during the period specified by him. This proof, however, was not, in our opinion, sufficient to justify the jury in disregarding Haines' testimony upon this point.

The principal question, therefore, would seem to be this: Does the fact that Mr. Haines, for a period of over twenty successive years, annually cut the salt hay upon the *locus in*

*quo,* justify us in declaring that the finding of the jury was contrary to the weight of the evidence? In the case of *Foulke* v. *Bond,* 41 *N. J. L.* 527, the principles on which the doctrine of title by adverse possession rests are thus stated by Mr. Justice Depue, speaking in the Court of Errors and Appeals (at *p.* 545) : "The possession must be actual and exclusive—adverse and hostile—visible or notorious—continued and uninterrupted. Notoriety of the adverse claim under which possession is held, is a necessary constituent of title by adverse possession, and therefore the occupation or possession must be of that nature that the real owner is presumed to have known that there was a possession adverse to his title, under which it was intended to make title against him. * * * A party relying on title derived from such a source must prove possession in himself or in those under whom he claims, of such a character as is calculated to inform the true owner of the nature and purpose of the possession to which the lands are subjected. The question whether possession has been held adversely continuously for the period of twenty years, with the requisite notoriety, is one of fact for the jury. * * * Occasional acts of trespass extending over the period of twenty years will not give title." In the case of *Cornelius* v. *Giberson,* 25 *Id.* 1, in which the title to a tract of timber land was involved, the defendant set up title by adverse possession, and attempted to sustain his claim by proof of the cutting of timber from time to time, and the erection of woodchoppers' cabins on the tract. It was also shown that the defendant had paid the taxes thereon. Chief Justice Green, speaking for this court, used the following language (*p.* 35) : "Will an occasional entry upon wild and uncultivated lands for the purpose of cutting wood or making surveys, joined with the payment of taxes, by a party having no legal title, there being no actual residence upon any part of the land, no cultivation, no enclosure, no improvement, no actual occupancy for any purpose whatever, operate to bar the title of the rightful owner? Or may several distinct entries and acts of trespass, coupled with temporary actual occupancy for the purpose of cutting wood, be thus united, and constitute one continuous adverse possession? The question is certainly of great moment in

this state, where there are extensive tracts of wild and uncultivated lands at all times exposed to trespasses and encroachments without the knowledge of the true owners. There is no decision of this court to countenance the doctrine, and the decided weight of authority elsewhere, as well as sound principle, is opposed to it. * * * * And in this view there is no distinction between a naked trespasser and one who enters under color of title. Both are alike trespassers. The title papers of the latter may serve to extend and define the limits of his occupancy, but it does not change its character. He is nevertheless a trespasser, and the moment his actual occupancy ceases, the rightful owner, without actual entry, is in possession by construction of law. The mere payment of taxes cannot prove possession. It may be evidence of a claim of title; it may serve to explain the character of the possession and to extend it beyond the limits of actual occupancy; but the payment of taxes by a party not having the actual possession of any part of the premises cannot prove possession. It would give the owner of the land no right of action against the party paying taxes as a trespasser; and no act can show possession in a party doing it which will not afford to the owner of the land a remedy by action."

Two principles may be considered to have been established by the authorities referred to—one, that occasional acts of trespass committed upon wild and uncultivated lands, although extending over a period of twenty years, will not give title; two, if such acts occur with sufficient frequency they amount to that continuity of possession which is an essential ingredient of title by adverse possession. These are legal rules, but whether in a given case the acts of trespass relied upon to establish title are of sufficient frequency to amount to a continuity of possession, is necessarily a question of fact to be determined by the jury under proper instructions from the court. In the present case, the jury has determined that acts of trespass committed annually upon the property of the real owner do not amount to that continuity of possession which is necessary to be established in order to support a claim of title by adverse possession. We cannot say that they

were not entirely justified in so determining, and the claim of the plaintiff that the verdict of the jury was contrary to the evidence must, therefore, fail.

The claim that the verdict of the jury was contrary to law is without merit. The law of the case was that laid down by the trial court in its charge to the jury.

So, too, the claim that the verdict was contrary to the charge of the trial judge is without merit. An examination of the instruction to the jury shows that it was strictly regarded by that body in its finding.

Some contention is made in the brief submitted on behalf of the plaintiff that error in law appears in the charge of the trial court. But, as such error, if it exists, is not presented by any of the reasons submitted by the plaintiff as ground for setting aside the verdict, we have not given it consideration.

The rule to show cause will be discharged.