63 N.J. Super. 262 (1960)
164 A.2d 492
WILLIAM FOSTER, PLAINTIFF-RESPONDENT,
v.
NEW ALBANY MACHINE & TOOL CO., INC., AND WILLIAM L. CASE, PRESIDENT AND GENERAL MANAGER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1960.
Decided October 17, 1960.
*264 Before Judges GOLDMANN, FREUND and KILKENNY.
Mr. Clifford W. Starrett argued the cause for appellant (Messrs. Schenck, Smith & King, attorneys).
Mr. Arthur J. Breitkopf argued the cause for respondent (Mr. Michael Breitkopf, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants appeal from a county district court order denying their motion to vacate a default judgment entered against them in plaintiff's property damage action. They maintain that the trial court erred because plaintiff had failed to give them notice of the taking of default judgment as required by R.R. 7:9-4, and for the further reason that the judgment was entered in violation of an agreement between the parties.
The judgment arose out of an accident which occurred July 24, 1956 when defendant Case, president and general manager of defendant New Albany Machine & Tool Co., Inc., drove a company trailer-truck into plaintiff's gas station in such manner as to strike and damage an overhanging roof. Case wrote New Albany's insurance carrier the next day, admitting his negligence and requesting the *265 insurer to settle plaintiff's claim. There were apparently efforts at settlement, but the matter could not be adjusted.
Plaintiff instituted suit on August 5, 1959, some three years after the accident, service being effected upon the non-resident defendants on August 11, 1959 through the State Director of Motor Vehicles. N.J.S.A. 39:7-2. Defendants at once forwarded the suit papers to the Reading, Pa., office of Travelers Insurance Company, their insurance carrier. That office, in turn, sent them to the insurer's Newark, N.J., office. Upon receipt of the papers there, Supervising Adjuster LeRoy phoned plaintiff's attorney Breitkopf, and requested and obtained an extension of time to answer. On August 18 LeRoy wrote Breitkopf thanking him for "granting us an extension of time" and advising that he had requested the Reading office to give preferred attention to the claim. No formal consent to the extension was filed, as required by R.R. 4:12-1(c), made applicable to the county district court by reason of R.R. 5:2-1 and 7:1-3.
Defendants having failed to appear, plead or otherwise defend, the county district court clerk entered default on September 3, 1959 as a matter of course, pursuant to R.R. 7:9-1. Defendants were not aware of this entry of default, and plaintiff did nothing for the time being to obtain a default judgment under R.R. 7:9-2.
Travelers' Newark office wrote plaintiff's attorney on September 1, 1959 suggesting he forward the necessary copies of estimate and proof of loss. Such an estimate, dated May 10, 1958 and in the sum of $2,250, was submitted on October 29. LeRoy alleges in his affidavit that on November 5 F.J. Webb of his office discussed with plaintiff's attorney Breitkopf the fact that the file referred from Reading had very little information in it, and that Breitkopf agreed to continue the extension of time to answer. Breitkopf denies this and insists he gave only one, original, oral ten-day extension.
The Newark office continued in its efforts to obtain additional information regarding the accident and claim. It *266 finally received the complete file on January 13, 1960. Webb immediately advised plaintiff's attorney of this by phone, and was then informed that "judgment" had been obtained on September 3 preceding. LeRoy's affidavit alleges that Breitkopf was advised that Travelers' file indicated the damage suffered by plaintiff was done by other trucks as well as by defendants', and that Breitkopf said he would review the matter with plaintiff and get in touch with the Travelers office.
Without notice to defendants or Travelers, plaintiff proceeded to default judgment on February 25, 1960, pursuant to R.R. 7:9-2(b). Judgment was entered in the sum of $2,549.20.
Defendants moved to vacate the default judgment on the ground that it "was obtained after defendants had been granted an extension of time to answer the complaint, without notification to defendants, and that defendants, therefore, had no opportunity to defend; said defendants having a meritorious defense to the action." LeRoy's affidavit in support of the application, paragraph 13, states that Travelers was not advised that default judgment would be taken on February 25, 1960. That affidavit also alleges that defendants' appraisal of plaintiff's damages establishes a repair cost of $202.07. The affidavits on the motion to vacate also indicate that as late as March 14, 1960 the parties were trying to have the claim adjusted. The motion to vacate was denied July 12, 1960, and this appeal followed.
We first deal with defendants' contention that the default judgment should be vacated because entered in violation of an agreement between the parties. They argue that plaintiff's attorney, having granted defendants an indefinite extension of time to answer, which extension was confirmed by LeRoy's letter; having continued to negotiate with defendants' representatives long after default was entered on September 3, 1959 without defendants' knowledge; and then having proceeded to obtain a default judgment on February 25, 1960 without their knowledge, acted in such *267 a way as to entitle them to a vacation of judgment under R.R. 4:62-2(c) and (f). R.R. 4:62-2(c) authorizes the court to relieve a party from final judgment for fraud, misrepresentation or other misconduct of the adversary party, and (f) for any other reason justifying relief. This rule, too, is made applicable to county district courts by R.R. 5:2-1 and 7:1-3.
As noted, there was a sharp conflict as to the extension given, plaintiff contending it was for ten days only, conditioned on the execution of a written stipulation to that effect, in accordance with the rules. See R.R. 4:12-1(c), made applicable by R.R. 5:2-1 and 7:1-3. Defendants argue the extension was for an indefinite period, supporting this by referring to LeRoy's August 18, 1959 confirmatory letter. That letter, thanking attorney Breitkopf for "granting us an extension of time in which to file an answer," is surely ambiguous, to say the least. It does not mention an indefinite extension. Moreover, the circumstances would seem to negate the inference that plaintiff would be willing to give an indefinite extension.
Indeed, R.R. 4:12-1(c) forecloses any oral agreement for an indefinite extension. That rule provides:
"The time of a party to serve an answering pleading may be enlarged by consent in writing of the parties for a period not to exceed 30 days, and may not be further enlarged except upon notice and by order of the court for good cause shown expressly stated therein. Any written consent shall be filed with the clerk of the court."
The obvious purpose of this rule is to reduce time spent in litigation by preventing parties from consenting to lengthy delays in answering pleadings. Parties may in writing agree to a maximum extension of 30 days, and only the court may grant an extension beyond that time upon a showing of good cause. The informality with which counsel proceeded is not conducive to sound and efficient judicial administration, and is inexcusable. At the least, an appearance might have been entered on defendants' behalf.
*268 Even assuming the truth of defendants' claim that an indefinite extension to answer was given, the alleged agreement was in violation of the rule. There was nothing in writing, and there was no application to the county district court for an extension. If defendants' reliance was justifiable at all, it was for a maximum of 50 days from the date plaintiff was served. We conclude the trial court properly refused to vacate the default judgment because it was allegedly entered in violation of an alleged agreement between the parties.
There is, however, merit in defendants' contention that the judgment should be set aside because of plaintiff's failure to give them the notice required under R.R. 7:9-4, which states:
"Where a party entitled to a judgment by default fails to apply for the same within 4 months after entry of default, judgment shall not be entered except on application to the court and on written notice to the party in default served at least 3 days prior to the hearing of the application."
Plaintiff did not proceed to default judgment until February 1960, some five months after default had automatically been entered by the court clerk on September 3, 1959.
Plaintiff claims that defendants did not raise the question of notice under R.R. 7:9-4 when they moved before the county district court to vacate the default judgment, and therefore should not be allowed to raise the question on appeal. They point out that ordinarily only matters of jurisdiction or public policy will be considered for the first time on appeal. Roberts Electric, Inc. v. Foundations & Excavations, Inc., 5 N.J. 426, 429-430 (1950); Evtush v. Hudson Bus Transportation Co., 7 N.J. 167, 173 (1951); Ex-Cell-O Corp. v. Farmers Coop. Dairies Ass'n, 28 N.J. Super. 159, 161 (App. Div. 1953). However, both defendants' notice of motion and paragraph 13 of the LeRoy supporting affidavit, referred to above, indicate that reliance was placed on plaintiff's failure to notify defendants of the default judgment proceedings.
*269 Our courts have held that a motion to vacate a judgment obtained without notice should be granted. See W. & E. Corp. v. Vernicek, 2 N.J. Super. 266 (Ch. Div. 1949); Loranger v. Alban, 22 N.J. Super. 336, 341-343 (App. Div. 1952); Reilly v. Perehinys, 33 N.J. Super. 69, 75 (App. Div. 1954); Linden v. Gleffi, 6 N.J. 246, 252 (1951). These cases dealt with former Rule 3:55-2(b), now R.R. 4:56-2(c). The latter rule is almost identical in wording with R.R. 7:9-4, except for the time within which the party fails to apply for a default judgment to which he is entitled.
Prior to the adoption of R.R. 7:9-4, where a party entitled to a default judgment failed to apply within the time limited after entry of default, the action was deemed dismissed without prejudice and no judgment could be entered. See 17 N.J. Practice (Fulop, Municipal and District Courts), § 851, p. 449, fn. 6; 2C N.J. Practice (Del Deo), 196. Under the present rule a party entitled to a default judgment may apply for entry of judgment after the four-month period, but only on proper written notice to the defaulting party. In the absence of such notice plaintiff should not be able to obtain more than he could under the old rule, i.e., dismissal without prejudice.
There can be little doubt that defendants have been prejudiced by entry of the default judgment. From the time the suit papers were served the insurance company sought to determine the details of the claim and the possibility of a settlement, and in this effort plaintiff's attorney participated in significant measure. It proceeded, although mistakenly, in reliance upon an extension of time to answer. The claim was being processed to an expected finality at the very moment plaintiff's attorney, without notice, applied to the court for the entry of default judgment.
An application to vacate a judgment under R.R. 4:62-2 is addressed to the sound discretion of the court which entered the judgment. Equitable considerations apply. As was said in Loranger v. Alban, above, 22 N.J. Super., at page 342, our courts have held that great liberality should *270 be allowed in opening a judgment which went by default. Any reasonable ground for indulgence is tolerated. Any doubt should be resolved in favor of the application to the end of securing a just result.
Defendants have no meritorious defense on the issue of liability. Their July 25, 1956 letter to the insurance agent was a clear admission of liability. Liability was freely admitted at the oral argument. However, defendants assert that their estimate shows damages by them of only $202.07, and claim that any further damage suffered by plaintiff was done by others and is not chargeable to them. Defendants should have their day in court to determine damages properly assessable against them.
The default judgment will be vacated and the matter remanded to the county district court for a new trial as to plaintiff's property damage for which defendants are responsible.