84 N.J. Super. 313 (1964)
202 A.2d 175
AARON MARDER, PLAINTIFF-APPELLANT,
v.
REALTY CONSTRUCTION CO., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, AND LEONARD ENGLEBROOK, ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1964.
Decided June 25, 1964.
*316 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Philip J. Mylod argued the cause for appellant (Messrs. Mylod & Mylod, attorneys).
Mr. Harry Krieger argued the cause for respondent.
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff appeals from the reopening of a default judgment against defendant Realty Construction Co., from the dismissal of his action for the recovery of possession of lands and for mesne profits under N.J.S. 2A:35-1 and 35-2 after his opening statement to the jury, and from a denial of his motion for a new trial.
Plaintiff was the owner of a strip of property some 200 feet long and a varying width of between 8 and 23 feet, located at the northwest corner of Chestnut Street and the Garden State Parkway Marginal Road in East Orange. The property adjoins a driveway which forms a portion of apartment house premises owned by defendant Realty Construction Co.
On October 9, 1961 plaintiff commenced an action to recover possession of this strip of land and damages for mesne profits. Defendants failed to answer within the time prescribed, *317 and on November 3, 1961 plaintiff secured an order for judgment for the possession of the premises and for damages against defendant Realty Construction Co. in the sum of $750, with costs. (The cause was discontinued as against defendants Leonard Englebrook, superintendent of Realty's apartment house, and his wife.) This default judgment was vacated on December 11, 1961, and Realty (hereinafter defendant) was granted leave to file an answer, which it did.
The pretrial order states plaintiff's cause of action as follows:
"The plaintiff claims that the defendant has used and occupied his premises, ever since he owned same, in the following ways:
1. It has caused automobiles to be parked thereon.
2. It has caused its ash and refuse cans to be placed in front of said premises.
3. It has caused snow to be shoveled from its driveway on to said premises.
4. It has trimmed down a large tree and cut the grass and generally has landscaped the plaintiff's premises and made and maintained the plaintiff's premises to appear part of the defendant's premises and its landscaping, and has incorporated plaintiff's premises into its own, and in order to enhance the value of its own premises and the rental value and rentability of the many apartments therein."
Defendant contended that it had never deprived plaintiff of possession of any part of the premises in question. It admitted that plaintiff owned this land, and charged, in effect, that he allowed the foliage on his property to grow uncontrolled as a spite measure against it because it refused to purchase this property at the price demanded by him, he having purchased the property for $125 at a public auction.
The matter came on for a jury trial in the Essex County Court. Following the opening statement for plaintiff, in which counsel alleged that defendant had deprived plaintiff of the possession of his premises by the acts referred to above in the pretrial order, the trial court granted defendant's motion for involuntary dismissal, "without costs and without prejudice to the plaintiff's right to institute an action for trespass." Plaintiff's motion for a new trial was denied.
*318 Plaintiff first contends that the court erred in vacating the default judgment, and requests this court to reverse the order and reinstate that judgment. R.R. 4:62-2 provides that a court may, upon such terms as are just, relieve a party from the effect of a judgment for any of several reasons, including mistake, inadvertence, surprise or excusable neglect. It is well established that the decision granting or denying an application to open a judgment rests within the sound discretion of the trial court, exercised with equitable principles in mind, and will not be overturned in the absence of an abuse of that discretion. See, e.g., Greenberg v. Owens, 31 N.J. 402, 405 (1960); Hodgson v. Applegate, 31 N.J. 29, 37 (1959); Shammas v. Shammas, 9 N.J. 321, 328 (1952).
Generally, a defendant seeking to reopen a default judgment must show that the neglect to answer was excusable under the circumstances and that he has a meritorious defense. Tradesmens Nat. Bank & Trust Co. v. Cummings, 38 N.J. Super. 1, 4-5 (App. Div. 1955); Ballurio v. Campanaro, 30 N.J. Super. 548, 551-552 (App. Div. 1954).
In the instant case the excuse offered, that the corporate defendant's president  an attorney of long standing in this State  sent the summons and complaint to the insurance company which had issued defendant a comprehensive liability policy, and that the company had not notified defendant of its denial of liability under that policy until after the time for answering had elapsed, was at best a weak one. Nevertheless, the allegation that the belief as to insurance coverage was sincere, was in the final analysis, something for the trial court to decide, and we are satisfied that the acceptance of this explanation as excusable neglect was well within its discretion.
A more serious question arises, however, as to the issue of a meritorious defense. The affidavit presented by defendant alleged that it in fact had a meritorious defense, but failed to include a statement as to what the defense was. Normally, this failure to plead the details of what the meritorious defense is would be fatal to an application for reopening *319 of a judgment. However, the opening of default judgments should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached. Foster v. New Albany Machine & Tool Co., 63 N.J. Super. 262, 269-270 (App. Div. 1960). Even where a defendant admits liability, a reopening of the judgment for purposes of assessing damages is proper where the defendant provides a reasonable assertion to the effect that it is not liable for the amount of damages claimed by the plaintiff. Id.
While defendant no longer denies the acts complained of, it does deny that they constituted an ouster of plaintiff so as to make it liable under N.J.S. 2A:35-2. Damages for mesne profits may be recovered for the value of the benefit received by the disseizor during the time he occupied the plaintiff's property, even though such occupation may not have caused any injury to the property. See 28 C.J.S. Ejectment, § 128, p. 1024. Compare 87 C.J.S. Trespass § 120, p. 1075. If, however, as defendant contends, the acts complained of constituted no more than several isolated incidents of trespass, plaintiff's recovery would be limited to (in addition to nominal damages for each act of trespass itself) the difference in value of his property prior to and after the trespasses. Huber v. Serpico, 71 N.J. Super. 329, 344 (App. Div. 1962). Since plaintiff has never alleged that defendant's acts caused any diminution in the value of his property, it can be seen that the theory upon which he tries his case can have a significant effect upon the measure of damages. In this respect the issue is not unlike that involved in Foster, supra. Further, since it would be possible for plaintiff to prevail in his proofs of trespass but fail in proofs of possession by defendant which would entitle him to the recovery of mesne profits, the damages question involves the very issue of liability under plaintiff's theory. In view of this, and in view of the strong tendency to favor the trial court's discretion in dealing with default judgments, we feel constrained to affirm the court's ruling on this matter.
*320 Plaintiff further contends that the trial court erred in dismissing his action for ejectment after his opening statement. In that statement plaintiff based his claim for recovery on N.J.S. 2A:35-1, which reads:
"Any person claiming the right of possession of real property in the possession of another, or claiming title to such real property, shall be entitled to have his rights determined in an action in the superior court or in the county court of the county wherein the real property is located."
On plaintiff's motion for a new trial the court stated that since defendant had at the pretrial conference admitted plaintiff's ownership of the property, and since at the time of trial defendant had not for more than a year committed any of the acts complained of upon that property, plaintiff's action did not fall within the terms of the statute upon which he based his cause of action. The court further stated that an action for mesne profits under N.J.S. 2A:35-2 could not be brought unless plaintiff was trying "a possessory action, a claim to title." It was the court's view that since nobody disputed plaintiff's claim to title, recovery under the statute for mesne profits could not be had. The judge stated that at most plaintiff had a right of action for several acts of trespass on the part of defendant, and that the court had reserved to plaintiff a right to recover damages for trespass, but in view of his persistence in seeking damages under the statute the action had to be dismissed. The court denied plaintiff's motion for a new trial, reminding him that he could still bring an action for defendant's trespass upon his property. Plaintiff chose instead to appeal to this court.
There can be no doubt that N.J.S. 2A:35-1 is intended to allow a remedy to one who claims title to property in the possession of another. The statute replaces the common law action of ejectment, which generally was maintained against a defendant in possession of the property in question, but which could be maintained where the land was vacant and unoccupied if the defendant claimed title thereto. *321 See Perlstein v. Pearce, 12 N.J. 198, 204 (1953); Toth v. Bigelow, 1 N.J. 399, 406 (1949). The trial court was correct, therefore, in stating that the statutory action, N.J.S. 2A:35-1, could not presently lie against defendant since it was not in possession and did not claim title to the property. This does not necessarily mean, however, that plaintiff is not entitled to recover mesne profits under N.J.S. 2A:35-2. Although dependent upon possession by defendant, the claim for mesne profits derives historically from a trespass action and is in essence a claim separate from the suit for possession of the property. See American Can Co. v. Dornoil Products Co., 126 N.J.L. 345, 347-348 (E. & A. 1941); 18 Am. Jur., Ejectment, § 148, pp. 117-18. One who wrongfully deprives the true owner of possession cannot defeat an action to recover mesne profits merely by giving up possession and disclaiming any interest in the property upon being served with process. See 28 C.J.S. Ejectment § 25b(2), p. 880. Thus, if the facts alleged by plaintiff and mentioned in his opening statement to the jury could reasonably be viewed as constituting an ouster of plaintiff from possession of the property in question, the trial court erred in refusing to allow his suit in respect of the right to recover damages for mesne profits. If, on the other hand, these acts of defendant could not in their totality reasonably amount to an ouster of plaintiff from possession, the dismissal must be affirmed.
There can be no doubt that the acts complained of, when taken separately, constitute mere trespass. The question is whether these acts of trespass were so continuous and of such a nature as to constitute possession of the property and a disseizin of the true owner. See 1 Harper and James, Torts, § 1.7, p. 24. "Possession" in this sense may aptly be described as occupancy of land with the intent to control it or, in cases where the land is vacant, the right as against all persons to immediate occupancy thereof. Compare Restatement, Torts, § 157, pp. 358-59 (1934).
In our opinion the acts of defendant constituted mere trespass which, even when taken as a whole, cannot reasonably *322 be construed as an attempt by it to exercise such control and dominion over the property as to disseize plaintiff. Plaintiff was at no time deprived of his right to go on this property and to do with it as he pleased. We view defendant's unauthorized intrusions upon that property in cutting the grass and trimming the hedge or tree thereon as being for the purpose of mitigating an eyesore rather than exercising the rights of ownership. The parking of the automobile on a portion of the property, a daily occurrence for some four months, plainly did not constitute "possession" of the property. The shoveling of snow from defendant's driveway onto the adjoining property of plaintiff, and the placing of garbage cans in front of that property, are clearly the reult of the physical proximity of plaintiff's land to that of defendant, and not, as plaintiff argues, indications to all the world that defendant was appropriating the property to its own use.
Plaintiff relies on Nugent v. Grassman, 91 N.J.L. 360 (Sup. Ct. 1918), for the proposition that whether or not acts of trespass are sufficient to constitute an ouster of possession is a jury question. This is no doubt true. It does not change our view of this case, however. Nugent was an action of ejectment involving the title to a tract of meadowland. It was contended by the plaintiff that his predecessor in title had, by coming upon the area in question and cutting the salt hay thereon annually for 36 consecutive years, by cleaning out ditches around the tract from time to time thereafter, and by placing stakes at each corner of the tract which remained in their original position up to the time of trial, gained title to the property by adverse possession. The question was whether these acts were sufficiently continuous, open and notorious to constitute adverse possession. The court properly held that these facts created a jury question.
Viewed realistically, the totality of the acts complained of in the instant case evince no intention on the part of defendant to exercise control or dominion over the property in question. To say that plaintiff was ousted from possession thereby, or that a question of fact on that issue was created by these *323 acts, is to lose sight of the realities of the situation. The background details of this case need not be recited here, but it is plain that the conduct of the parties and this entire litigation stems from ill will between the parties rather than any bona fide dispute as to legal rights.
Plaintiff was and is entitled to nominal damages for each "breaking of the close." He is further entitled to damages for the diminution in the value of his property caused by these trespasses. It is apparent, however, that there has been no such diminution. Indeed, it is no doubt for this very reason that plaintiff persists in his efforts to bring this case under a theory of ejectment, which would allow the recovery of damages for mesne profits based upon the benefit derived by the disseizor, as ordinarily measured by the fair and reasonable value of the land, see Morvay v. Gressman, 29 N.J. Super. 508, 512 (App. Div. 1954), irrespective of actual loss to the true owner.
We are satisfied that defendant had never in fact occupied the premises in such a way as to constitute possession thereof, and that it has obtained no significant benefit from its trespasses except that through its own labor it eliminated an unsightly condition. Under the ruling of the trial court plaintiff is still free to go forward with a suit for the recovery of damages for the injuries to his property resulting from defendant's trespasses. We have examined the other points raised by plaintiff and find them to be without merit.
Affirmed.
CONFORD, S.J.A.D. (dissenting).
Defendant's stress upon the unworthiness of plaintiff's motives in bringing this action should not affect the disposition of the strictly legal issues involved.
A jury could well here have found that the asserted acts of dominion by defendant over this parcel of land represented in totality precisely the same range of possessory conduct with relation thereto that an owner would normally have exercised, particularly if he also owned the adjoining apartment house; *324 and that such conduct transcended the category of isolated acts of trespass and rose, by virtue of the nature, regularity and elapsed period thereof, to the status of possession. "Subjection of the land to the actual dominion of the defendant," as could have here reasonably been found to be the fact, will constitute an ouster of the owner. 28 C.J.S. Ejectment § 25, p. 879. These issues being peculiarly for the jury, Nugent v. Grassman, 91 N.J.L. 360 (Sup. Ct. 1918), the action should not have been dismissed on plaintiff's opening but should have gone to trial. I would reverse.