NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0280-15T2

MICHAEL J. MORTORANO,

 Plaintiff-Respondent,

v.

TODD SIEGMEISTER,

 Defendant-Appellant,

and

RICHARD ALBA,

 Defendant-Respondent.

_________________________________

 Argued October 24, 2017 – Decided November 20, 2017

 Before Judges Leone and Mawla.

 On appeal from Superior Court of New Jersey,
 Law Division, Passaic County, Docket No. L-
 3737-13.

 Todd Siegmeister, appellant, argued the cause
 pro se.

 Michael J. Mortorano, respondent, argued the
 cause pro se.

 Respondent Richard Alba has not filed a brief.
PER CURIAM

 Defendant Todd Siegmeister appeals from an August 21, 2015

judgment entered against him in favor of plaintiff Michael J.

Mortorano for breach of contract following a bench trial. We

affirm.

 I.

 The following facts are taken from the record. Plaintiff was

involved in the logistics business for forty years, selling goods

abroad, including in Africa. In 2010, he was approached by

defendant Richard Alba to procure $30,000 worth of cellular

telephones to sell in Ghana. Plaintiff and Alba entered into an

agreement whereby plaintiff would obtain the telephones, ship them

to Alba's Ghanaian contact Cozi Alovor1, who would in turn sell

the telephones, and plaintiff would thereafter be paid. Alovor

was tasked with selling the telephones because he was licensed to

do business in Ghana. The testimony at trial established that

only a Ghanaian resident could conduct business in Ghana.

 After plaintiff obtained the telephones, he received an email

from Alba dated November 2, 2010, stating "send the phones."2

1
 The spelling of Alovor's name varies in the record. We utilize
the spelling used by the trial judge.
2
 We have not been provided the trial evidence. We derive the
contents of the evidence from the trial court's recitation of it.

 2 A-0280-15T2
Plaintiff prepared an invoice and sent it to Alba on November 24,

2010. Alba responded with an email on November 29, 2010, enclosing

plaintiff's invoice, which Alba had signed, stating "Here is the

signed invoice for the cell phones."

 At trial, plaintiff also produced an invoice from "Sunday's

Seconds," which had sold him the telephones he intended to ship

to Alovor. When plaintiff received the telephones from Sunday's

Seconds, he forwarded them to the shipper for inspection.

Plaintiff adduced an air bill of lading, proving the shipment was

sent to Ghana in December 2010, and for plaintiff's payment of the

shipping costs.

 Plaintiff was not paid. Beginning in February 2011, an email

exchange between plaintiff and Alba ensued regarding plaintiff's

payment for providing the telephones. In one email, Alba

represented "When [Alovor] sells the phones, I will give you the

money."

 The email exchange continued through March 2011. In one

exchange Alba referenced Siegmeister was having difficulty

obtaining payment for a separate gold transaction in Africa that

had gone awry. Plaintiff's response was "I can't stay calm. I

don't like liens on my house and all of this pressure for phones

and money that everyone owes me."

 3 A-0280-15T2
 Based on the invoice evidence and the email correspondence,

the trial judge concluded plaintiff and Alba had contracted to

sell telephones in Ghana. The judge found plaintiff had procured

the telephones, demonstrated his payment for them and the shipping,

was asked by Alba to ship them, and an obligation to pay plaintiff

was acknowledged through the subsequent emails between Alba and

plaintiff.

 Plaintiff adduced email correspondence dated April 2011,

between him and Alba. In it, plaintiff stated: "It now appears

that you have all the proof that [Siegmeister] had robbed from you

the money and/or the cellphones from you." Alba responded: "As

of an hour ago, someone is communicating on behalf of [Alovor] to

resolve this matter. I can't blame [Siegmeister] yet." The trial

judge concluded "That's the crucial words that really bring some

color into this case, because that's the first time that you could

really see that [] Siegmeister's name is related to these cell

phones."

 Plaintiff also adduced an email from May 2011, from Alba.

These emails copied Siegmeister and another business associate,

Tony D'Onofrio. The emails explained that funds were frozen in

Ghana totaling $150,000, which Alba, Siegmeister, and D'Onofrio

were awaiting to be released by the Ghanaian court. These funds

were related to a criminal prosecution instituted by Siegmeister

 4 A-0280-15T2
against Alovor. The trial judge found this correspondence further

confirmed acknowledgment of the contract and the funds owed to

plaintiff.

 Plaintiff also adduced proof, by way of a corporate resolution

dated January 2010, from Crown Financial Solutions (Crown

Financial), naming Alba as a director of the corporation. The

resolution pre-dated the contract for the cellular telephones and

bore Siegmeister's signature as president of Crown Financial.

 Based upon the totality of the evidence adduced, the trial

judge concluded Alba and Siegmeister were business partners. The

judge stated:

 So Crown Financial [] was suing [] Alovor for
 the money that he took. And that's also
 confirmed in the emails where they're going
 back and forth about the fact that they're
 waiting to see what happens with the criminal
 action so that they can recoup their money and
 perhaps people can recover the monies that are
 owed to the various people that are mentioned
 in the emails.

 The trial judge concluded:

 [A]s I understand it from reading all of these
 emails, there could only be one conclusion
 that's credible based on all the testimony.
 Is that [plaintiff] gave the phones to Alba
 to sell. . . . [Alba] got [Alovor] and Crown
 Financial to sell the phones because of their
 contacts in Ghana. . . . [Alba] didn't have
 a license [to do business in Ghana]. . . . So
 Alba agreed with [plaintiff] to transport the
 cell phones to [Alovor], but [Alovor] really
 works for Crown Financial and [] Siegmeister.

 5 A-0280-15T2
The judge further concluded Siegmeister, Alba, and Alovor were all

a part of Crown Financial and the telephones were "given to Crown

Financial, [] Siegmeister, and/or [Alovor] all as one organization

for sale."

 The trial judge next reviewed a January 3, 2013 email from

plaintiff to Alba and D'Onofrio recounting a conversation

plaintiff had with Siegmeister. According to plaintiff,

Siegmeister represented Alovor had been sentenced to prison for

stealing money from the business venture and a civil litigation

had been instituted against him in Ghana. Siegmeister also stated

$210,000 would be collected by March 2013 as a result of the civil

litigation, from which plaintiff would receive $30,000. The judge

noted Siegmeister testified that he only promised to give plaintiff

$30,000, but he never had a contract to pay him $30,000.

 Alba's reply email disputed the sums Siegmeister would pay

from the $210,000 because Alba claimed he was owed $378,000. In

regards to plaintiff's $30,000, Alba stated: "With regard to your

30k you are seeking for phones that you sent which never worked,

you and [Siegmeister] are planning to make millions [] building

hospitals and you're asking for [$]30,000 for phones that never

worked on an investment you made of [$]5,000." The judge found

Alba's email was further evidence that he contracted with plaintiff

 6 A-0280-15T2
to sell the telephones. The judge concluded "There's no question

that [] Alba owes [plaintiff] the monies, based on everything that

I've just stated earlier."

 The trial judge also found that Siegmeister was the author

of Alba's email to plaintiff. The judge noted she had viewed the

email on plaintiff's telephone and it was clear the email had been

forwarded to him from an email address that belonged to

Siegmeister.

 Additionally, the trial judge heard testimony about a meeting

between plaintiff, Alba, and Siegmeister at a diner on January 7,

2013. Plaintiff adduced this testimony from Donald Alston, who

plaintiff brought to the meeting as a witness. Alston testified

that during the meeting Siegmeister acknowledged $30,000 was owed

to plaintiff. The judge credited Alston's testimony and the email

from Siegmeister, and concluded Siegmeister's testimony denying

the existence of a contract with plaintiff was not credible. The

trial judge found "Siegmeister made an agreement with [plaintiff]

to pay him $30,000."

 The trial judge entered a judgment against Siegmeister for

$30,000. The judge denied plaintiff punitive damages and found

no evidence of fraud. Siegmeister now appeals from the judgment.

 7 A-0280-15T2
 II.

 We begin with our standard of review. A trial court's

findings "should not be disturbed unless '[] they are so wholly

insupportable as to result in a denial of justice[.]'" Rova Farms

Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)

(quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App.

Div.), aff'd o.b., 33 N.J. 78 (1960)). When the trial court's

findings are "supported by adequate, substantial and credible

evidence," those findings should be upheld on appeal. Id. at 484

(citing N.J. Tpk. Auth. v. Sisselman, 106 N.J. Super. 358 (App.

Div.), certif. denied, 54 N.J. 565 (1969)).

 "[O]ur appellate function is a limited one: we do not disturb

the factual findings and legal conclusions of the trial judge

unless we are convinced that they are so manifestly unsupported

by or inconsistent with the competent, relevant and reasonably

credible evidence as to offend the interests of justice."

Fagliarone v. N. Bergen, 78 N.J. Super. 154, 155 (App. Div.),

certif. denied, 40 N.J. 221 (1963); see also Rova Farms, supra,

65 N.J. at 484. The function of this court is to determine whether

there is "substantial evidence in support of the trial judge's

findings and conclusions." Weiss v. I. Zapinsky, Inc., 65 N.J.

Super. 351, 357 (App. Div. 1961).

 8 A-0280-15T2
 Furthermore,

 When the credibility of witnesses is an
 important factor, the trial court's
 conclusions must be given great weight and
 must be accepted by the appellate court unless
 clearly lacking in reasonable support. "[T]he
 trial court is better positioned [than we] to
 evaluate [a] . . . witness' credibility,
 qualifications, and the weight to be accorded
 her testimony."

 [N.J. Div. of Youth & Family Servs. v. F.M.,
 375 N.J. Super. 235, 259 (App. Div. 2005)
 (quoting In re Guardianship of DMH, 161 N.J.
 365, 382, (1999)) (citation omitted).]

 Siegmeister asserts "there is good cause to set aside the

August 21, 2015 order using both case law and Rule 4:50-1(a), (b),

(c), (d) and (f)." By "case law," it is apparent from defendant's

brief that he is relying upon our decision in Marder v. Realty

Constr. Co., 84 N.J. Super. 313, 318-19 (App. Div.), aff’d, 43

N.J. 508 (1964), which addressed the standard applied to vacate

default judgment.

 Siegmeister's legal argument misconstrues the law. This is

a direct appeal from the judgment entered after trial. Rule 4:50-

1 addresses the grounds for collateral relief, not a direct appeal.

Also, our holding in Marder, supra, 84 N.J. Super. at 318-19,

addressed the basis on which to vacate a judgment entered in

default, not after a full trial in which both parties participated.

Because neither of these conditions exist here, the law Siegmeister

 9 A-0280-15T2
cites is inapplicable. Moreover, Siegmeister cannot contest the

judgment on the grounds asserted under Rule 4:50-1, where those

grounds were not asserted before the trial court.

 Our Supreme Court has stated:

 It is a well-settled principle that our
 appellate courts will decline to consider
 questions or issues not properly presented to
 the trial court when an opportunity for such
 a presentation is available "unless the
 questions so raised on appeal go to the
 jurisdiction of the trial court or concern
 matters of great public interest."

 [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229,
 234 (1973) (quoting Reynolds Offset Co., Inc.
 v. Summer, 58 N.J. Super. 542, 548 (App. Div.
 1959), certif. denied, 31 N.J. 554 (1960)).]

For these reasons, we decline to address these arguments.

 Siegmeister next argues plaintiff did not prove the existence

of a contract between them. Siegmeister asserts there was no

written contract between them and one was required under the

Uniform Commercial Code (UCC). Siegmeister argues even if there

was a contract, plaintiff failed to perform under it by delivering

the telephones to him. Siegmeister also argues he was unaware of

the agreement to ship the telephones to Alovor until after the

goods had been shipped, and Alovor was incarcerated.

 These arguments lack merit. The trial court painstakingly

reviewed the documentary and testimonial evidence. The objective

evidence demonstrated Alba and Siegmeister were members of the

 10 A-0280-15T2
same corporation, Crown Financial, and Alovor represented them in

Ghana. Plaintiff was instructed to procure and ship the telephones

to Alovor. Alba, on behalf of Siegmeister and Crown Financial,

acknowledged the shipment by endorsing the invoice furnished by

plaintiff.

 The trial judge found other evidence of the contract within

the emails sent by Alba conceding an obligation to pay plaintiff.

The judge rejected Siegmeister's testimony that he was unaware of

the transaction by finding Siegmeister had acknowledged the debt

in an email, and crediting the testimony of Alston. The judge

concluded:

 So I find that [] Siegmeister, he wasn't
 credible when he testified. We have a notion
 in the law which is called false in one, false
 in all.

 . . . .

 [A]fter reviewing this email and realizing
 that in fact, [] Siegmeister wrote the email,
 I don't find his testimony credible at all.
 And . . . that email, in conjunction with []
 Alston's testimony that in fact, monies were
 owed [plaintiff], I do find that []
 Siegmeister made an agreement with [plaintiff]
 to pay him the $30,000.

The trial judge's credibility findings are supported by the record

and we defer to them.

 The trial judge also found the UCC applied, but did not serve

as a defense because plaintiff and Siegmeister were considered

 11 A-0280-15T2
merchants, and the UCC does not mandate a written contract between

merchants. We agree.

 The UCC provides:

 (1) Except as otherwise provided in this
 section a contract for the sale of goods for
 the price of $500 or more is not enforceable
 by way of action or defense unless there is
 some writing sufficient to indicate that a
 contract for sale has been made between the
 parties and signed by the party against whom
 enforcement is sought or by his authorized
 agent or broker.

 (2) Between merchants if within a reasonable
 time a writing in confirmation of the contract
 and sufficient against the sender is received
 and the party receiving it has reason to know
 its contents, it satisfies the requirements
 of subsection (1) against such party unless
 written notice of objection to its contents
 is given within ten days after it is received.

 (3) A contract which does not satisfy the
 requirements of subsection (1) but which is
 valid in other respects is enforceable.

 . . . .

 (c) with respect to goods for which
 payment has been made and accepted
 or which have been received and
 accepted [].

 [N.J.S.A. 12A:2-201.]

 The evidence supports the trial judge's findings that the

parties had a binding contract under the UCC. A contract was

proven under N.J.S.A. 12A:2-201(1), because the invoices

 12 A-0280-15T2
acknowledged and signed by Alba on behalf of Crown Financial meet

the definition of a writing under the UCC.

 The evidence supports a finding under N.J.S.A. 12A:2-201(2)

because the judge found both plaintiff and Siegmeister to be

merchants. The judge also found that Siegmeister was aware of the

contract because Siegmeister was scrivener of the email

acknowledging the sums owed to plaintiff on account of receipt of

the telephones. Also, the judge found Siegmeister did not object

to the terms of the contract because he acknowledged the debt in

the meeting at the diner, and pursued Alovor for the funds to pay

plaintiff his $30,000.

 Finally, the evidence also satisfies a finding under N.J.S.A.

12A:2-201(3)(c). Plaintiff established he procured the

telephones, was instructed to ship them to Ghana by Alba, and

Alovor accepted them on behalf of Alba and Siegmeister.

 For these reasons, we are satisfied the adequate,

substantial, and credible evidence in the record supports the

trial judge's findings. The weight of the credible evidence

supports the entry of judgment in favor of plaintiff against

Siegmeister.

 Affirmed.

 13 A-0280-15T2