**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2299-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDRE GREEN, a/k/a
DRE ANDRAE GREEN 13,

    Defendant-Appellant.

_____

Submitted December 18, 2024 – Decided March 27, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-06-0488.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Leandra L. Cilindrello, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Andre Green appeals from the January 12, 2023 Law Division order denying his application for post-conviction relief (PCR) without an evidentiary hearing. Because defendant failed to make a prima facie showing of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984), we affirm.

I.

After defendant's first trial resulted in a mistrial due to a hung jury, a second jury convicted him in 2018 of the first-degree murder, N.J.S.A. 2C:11-3(a), of Antoine Garris, and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), and found him not guilty of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). The trial court merged the possession of a weapon conviction with the murder conviction, and sentenced defendant to sixty years' imprisonment and an eighty-five percent term of parole ineligibility subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. We affirmed defendant's convictions on direct appeal. See State v. Green, No. A-5875-17 (App. Div. Jan. 4, 2021) (slip op. at 27).

The facts and procedural history underlying defendant's convictions are detailed in our decision on direct appeal. See id. at 3-8. Although defendant's PCR petition before the trial court raised several issues, he confines his appeal

to the singular claim that his trial counsel was prejudicially deficient for failing to effectively investigate and present a defense of third-party guilt. In addressing this argument, we synthesize and incorporate the relevant facts from our prior opinion, together with the record of the PCR proceedings, to provide the necessary context for our decision.

## A.

Numerous witnesses testified at trial regarding the shooting and the events preceding it, contributing to, as we previously described, the "abundance" of evidence "overwhelmingly show[ing] defendant murdered Garris." Id. at 15. Testimony revealed that on September 15, 2014, defendant fought "with his wife in a car parked outside of a bar in Paterson." Id. at 3. Defendant exited the car and continued to shout at his wife, as Garris, hearing the commotion, came outside and advised defendant to leave. After a fist fight ensued between the two, defendant "left the scene . . . but returned fifteen minutes later armed with a gun" and entered the bar, where an eyewitness claimed defendant shot and killed Garris before fleeing on foot. Ibid. "On October 8, 2014, federal [M]arshals located and arrested defendant in Rochester, New York without incident," ibid., after which defendant made incriminating statements and admitted to the shooting.

A-2299-22

The Deputy U.S. Marshal testified regarding the admissions:

> [Defendant] stated he did not regret what he did. He stated that he couldn't believe he killed somebody, and that he didn't mean to. He stated that he believed the victim deserved what happened and the victim screwed his life up.
>
> He gave a story that he had a dispute with his wife and didn't appreciate what the other guy was saying to him. He said he shot him because of that and he must live with what he did. He stated he did not want to do [twenty-five] years in jail, but he accepted it as reality. That he would plead a manslaughter but not murder.

The victim's sister, Shavon Randolph, and cousin, Brandy Taylor, testified about statements defendant made to them in phone calls and text messages after the shooting. In one phone conversation with defendant, Randolph accused defendant of killing her brother, and defendant admitted to the murder and threatened her to stop her harassment or she would "end up like her brother." Following that call, defendant texted Randolph, "[n]ow you see why he's dead." Taylor testified that defendant called and threatened both Randolph and Taylor to "stop contacting [his] wife, and stop calling [his] phone, or [they're] going to get the same thing as [the victim]."

The State's witness, Jelessa Dennison, recalled that prior to the shooting she was smoking a cigarette outside of the bar when she observed "[defendant] and his baby mom . . . arguing and fighting in the car." She said "[defendant]

4

was beating on his baby mom while the kids w[ere] right in the back," before he "got out of the car," and continued his angry "ramping and raving." Dennison recalled Garris responded, telling defendant to leave to avoid a police response. She described their fist fight "in front of the [bar]," and testified that during the fight, she heard defendant tell the victim "I'm going to kill you."

Dennison did not previously mention this threat in her statement to police or at defendant's first trial. On cross-examination, as we noted in the direct appeal, defendant's attorney "vigorously" confronted Dennison about inconsistencies in Dennison's prior statements and her identification of defendant. Id. at 7.

The State presented surveillance camera footage, and Dennison identified both herself in front of the bar and defendant entering the bar. Dennison also testified that she left shortly after the fight ensued which the video corroborated.

Another witness, Wayne Clyburn, testified, explaining that just prior to the shooting, he witnessed a couple fighting in a car, "just going back and forth, smacking each other." At defendant's first trial, Clyburn testified he could not identify the car's occupants, but at the second trial, he stated that he recognized defendant as he exited his vehicle. We previously noted that trial counsel cross-

5

examined "extensively" Clyburn's identification of defendant and his ability to recall what happened.  Id. at 8.

Clyburn and Dennison each testified that after they left the bar together, they drove down the street to a nearby car wash.  Approximately ten to fifteen minutes later, they heard gunshots from the bar and ran towards the sound of the shots.  As Clyburn approached, he observed a man in a white shirt, later identified as defendant, leaving the bar and another man, later identified as Davon Bunch, running after him.  Clyburn "joined the pursuit," until defendant evaded them by entering the back of a white car parked on the next block, which then drove off.  Clyburn recalled speaking with police at the scene, but never testified he recognized defendant.  At trial, he testified that although he only saw the man from the back, he recognized him as defendant.

The State called Bunch, who testified that he was in the bar with the victim when defendant entered, began arguing with the victim, and shot the victim several times.  Bunch identified Clyburn and himself on a street surveillance video that depicted them running behind the man he identified as defendant.

A state police detective testified, with "practical certainty," that the seven shell casings found in the bar "were all discharged from the same firearm," which was never recovered.

A-2299-22

After the jury returned its guilty verdict, at the sentencing hearing, the court merged the gun conviction into the murder conviction and imposed a sentence of sixty years, with fifty-one years' NERA parole ineligibility.

B.

On January 4, 2021, we affirmed defendant's conviction. Although finding no substantive error, we deemed any arguable error harmless, as the State's proof was "overwhelming" leaving "no capacity for an unjust result." Id. at 22. We further concluded the trial court's sentencing decision was "reasonable" and could not "be considered an abuse of discretion resulting in an excessive sentence." Id. at 27.

C.

In July 2021, defendant timely filed a petition for PCR, accompanied by a certification in support of his petition. He sought relief under Rule 3:22-2(a), asserting ineffective assistance of both trial and appellate counsel. Defendant raised a list of alleged errors by trial counsel, including claims that counsel failed to (1) "advise defendant of his sentence exposure"; (2) "prepare and put up a significant defense, which left defendant stranded and subject to the prosecutor's tactics"; (3) "confront" three witnesses who "materially changed

A-2299-22

their . . . testimony" at the second trial from their prior trial testimony; and (4) "investigate and present a third party guilt defense."

On the issue of the alleged third-party guilt defense, defendant stated generally that "[b]y failing to investigate and present a third-party guilt defense, [his] attorney denied [him] []effective legal representation and [his] right to a complete defense." He claimed without any further specificity that he "asked [his] attorney [to] . . . investigate this defense." Defendant alleged that counsel's deficiency deprived him of a third-party guilt jury instruction.

Defendant further certified that he was entitled to PCR because his appellate counsel on direct appeal "failed to raise several meritorious claims of trial court error . . . including the trial court's denial of [defendant's] Wade[1] motion as to . . . Dennison." He generally claimed his "appellate attorney raised only two points, not including sentencing. . . . [and] d[id] not believe that she did a careful and thorough review of the case."

At the PCR hearing in September 2022, PCR counsel argued the issues raised in defendant's petition, adding claims that trial counsel failed to request that the trial court voir dire jurors who allegedly sat near a witness who

---

[1] United States v. Wade, 388 U.S. 218 (1967).

A-2299-22

represented he never communicated with any of the jurors and that counsel failed to request a voice identification charge regarding Taylor and Randolph's phone conversation.

The State argued as to all claims that defendant did not establish a prima facie case for ineffective assistance of counsel to warrant an evidentiary hearing because, "[e]ven assuming that the tactical decisions made by counsel during the course of the trial that led to the conviction were deficient, they in no way whatsoever had any outcome on the jury's verdict." Regarding defendant's argument that trial counsel failed to pursue a third-party guilt defense, the State emphasized that defendant raised a defense at trial of mistaken identity, and "[b]y definition[,] if this defendant did not do it, then someone else must have."

On January 12, 2023, the PCR court denied defendant's PCR petition and request for an evidentiary hearing. In its thorough oral decision, the PCR court engaged in a probing Strickland analysis and addressed and rejected in detail each issue raised by defendant's PCR counsel. The court cited our direct appeal decision concurring that the State's evidence "overwhelmingly" showed defendant's guilt, belying any argument of prejudice under Strickland.

Specifically, the court found: (1) trial counsel "extensively cross-examined Clyburn's identification of defendant[] and his ability to remember

what happened"; (2) trial counsel "extensively cross-examined . . . Dennison" regarding her inconsistent testimony about defendant's threats; (3) Taylor's prior testimony was not inconsistent with her testimony at the second trial; (4) there was "no evidence . . . of any inappropriate contact between . . . Bunch and the jurors" and "trial counsel's action in not requesting a voir dire of the jurors" was a "reasonable tactical decision" made to avoid "unnecessary attention to an issue counsel may have wanted to avoid"; and (5) trial counsel was not ineffective for failing to request a voice identification charge regarding Taylor and Randolph's phone conversation noting the absence of any model jury charge on voice identification.

The court concluded defendant failed to overcome the strong presumption that trial counsel's conduct fell "within the wide range of reasonable professional assistance and any omitted questions were attributable to sound trial strategy."

Specifically concerning defendant's claims that trial counsel was ineffective for failing to pursue a third-party guilt defense, the PCR court noted:

> [T]he evidence presented by the State against defendant at trial consisted of a video of [defendant] running from the shooting scene being chased by an eyewitness to the murder, . . . Bunch, two witnesses identifying [d]efendant as the actor involved in the altercation outside of Moya's Bar before the shooting, [N.J.R.E.]

A-2299-22

404(b) evidence[,] and post-murder inculpatory statements made by [defendant] to [the] U.S. Marshal[] and the victim's sister.

The PCR court found "the proofs presented by the State were strong," and "trial counsel tried very hard to establish reasonable doubt based upon what he attempted to show were flaws in the identifications and [through] vigorous cross-examination[s] of several of the State's witnesses." Accordingly, it determined "given the strong proofs, the failure to develop a third-party defense by trial counsel did not constitute ineffective assistance of counsel."

The court ultimately denied the petition entirely, concluding "trial counsel's performance was not deficient in any fashion, and even if counsel['s] performance [was] deficient in some aspect, any deficiency would have had no effect on the outcome or the fairness of the trial, given the overwhelming proofs presented by the State." The PCR court denied defendant's request for an evidentiary hearing, finding there were no facts outside the trial record in dispute, and that defendant failed to establish a prima facie showing of ineffective assistance of counsel.

II.

On appeal, defendant argues:

POINT I

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE DEFENDANT ESTABLISHED A PRIMA FACIE CASE OF TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO INVESTIGATE A THIRD-PARTY GUILT DEFENSE.

Defendant claims the PCR court erroneously denied his PCR petition without an evidentiary hearing. Because he confines his appeal to his counsel's alleged ineffective assistance in failing to present a third-party guilt defense, we too confine our decision to that issue.

III.

We review a PCR court's legal conclusions de novo. See State v. Harris, 181 N.J. 391, 415 (2004). Likewise, without an evidentiary hearing, this court "may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (quoting State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014)).

A.

We first recognize the well-settled controlling legal principles. New Jersey's PCR petition serves as an "analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). "[N]either a substitute for direct appeal" for those criminally convicted nor a vehicle to re-litigate matters already resolved on their merits, PCR proceedings can offer the best opportunity for ineffective assistance claims to be reviewed. Id. at 459-60. When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, entitlement to the requested relief. Id. at 459. To sustain this burden, defendants must articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional

13

errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

Importantly, this court's review of counsel's performance under the first Strickland requirement "must be highly deferential," Strickland, 466 U.S. at 689, and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," requiring defendants to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under Strickland's second requirement, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if . . . [it] had no effect on the judgment." Id. at 691. Errors with "some conceivable effect on the outcome" fall short of warranting relief. Id. at 693.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing as defendants "must allege specific facts and evidence supporting [their] allegations." State v. Porter, 216 N.J. 343, 355 (2013). "[B]ald assertions" will not suffice. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(c) mandates that factual claims "must" be

made under oath, "by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." Further, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997).

B.

Against this backdrop we conclude defendant's claim lacks merit and is insufficient to warrant an evidentiary hearing. Defendant's showing regarding his claim that his counsel failed to investigate and present a third-party guilt defense rests upon his certification alleging only:

> 10. By failing to investigate and present a third-party guilt defense, my attorney denied me effective legal representation and my right to a complete defense. I had asked my attorney that he should investigate this defense.

> 11. Further, by failing to present this defense, the jury was not instructed by the trial court on third party guilt which compounded the prejudice.

Defendant does not certify to any facts that would have supported a third-party guilt defense or made such a defense meritorious. See Marder v. Realty Constr. Co., 84 N.J. Super. 313, 318-19 (App. Div. 1964) (holding "[n]ormally,

15

[the] failure to plead the details of what the meritorious defense is would be fatal to an application for reopening of a judgment"). This lack of specificity was "fatal" to defendant's claim, particularly given the volume and magnitude of the State's evidence of his guilt.

We need not again list at length the evidence, as it is detailed earlier in this decision, in our direct appeal decision, and again aptly by the PCR court. That evidence—including an eyewitness account of defendant committing the murder, video and eyewitness testimony regarding the altercation between defendant and the victim prior to the shooting, as well as to defendant's flight from the shooting while being pursued by testifying witnesses, and testimony from law enforcement and other witnesses regarding defendant's admission to shooting the victim—is virtually insurmountable when challenged by unsupported claims of an unspecific defense that an unspecified third party was the culprit.

We concur with the PCR court's well-reasoned decision denying an evidentiary hearing, finding no deficiency by trial counsel, and no showing of prejudice.

Defendant raised several other issues in his PCR petition that are not addressed in his brief. We deem those issues waived.[2] See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019) ("[A]n issue not briefed is deemed waived."); State v. Aloi, 458 N.J. Super. 234, 243 n.6 (App. Div. 2019) (noting an issue not briefed on appeal is deemed waived (citing Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008))). For completeness, however, we note only that we have reviewed those claims in light of the trial and PCR records and deem them without merit to warrant further discussion. See R. 2:11-3(e)(2). For the reasons set forth in the PCR court's thoughtful decision, we are not persuaded that defendant demonstrated "a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

---

[2] We note defendant's notice of appeal also identifies a challenge to the excessiveness of the sentence, a claim barred as already raised on direct appeal, R. 3:22-5, and otherwise not briefed or properly raised here.