706 A.2d 1144

SHEILA R. FINEBERG, PLAINTIFF/RESPONDENT, v.
M. ALAN FINEBERG, DEFENDANT/APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 12, 1997—Decided March 6, 1998.

Before Judges PRESSLER, CONLEY and CARCHMAN.

*Gary E. Fox*, attorney for appellant.

*Jacobowitz, Grabelle, Defino, McGroughran & Latimer,* attorneys for respondent (*Timothy F. McGoughran,* on the brief).

The opinion of the court was delivered by

CARCHMAN, J.S.C. (temporarily assigned).

This case again demonstrates the frustration encountered by the judges assigned to the Family Part, the matrimonial bar and the litigants themselves who are confronted with a litigant who manipulates the "system" in a manner designed to avoid bringing to an end a matrimonial dispute which has been pending for years and is finally ripe for disposition. Here, we have a defendant who "does not believe" that he received notice of the final hearing in his dissolution matter, who vigorously and successfully opposed the appointment of a guardian *ad litem* to protect his interests because of his questionable competency and then, within days of issuance of the notice of trial of the dissolution case, voluntarily hospitalized himself claiming mental disorder.[1] Defendant here appeals from the denial of his motion to vacate the judgment of divorce which dissolved the bonds of matrimony and granted alimony, reduced the *pendente lite* support arrears to judgment, continued a Domestic Violence Final Restraining order, reduced a *pendente lite* arrearage for medical insurance to judgment, required maintenance of a life insurance policy, awarded counsel fees and permitted plaintiff to resume her maiden name. Defendant does not challenge that part of the judgment that dissolved the marriage or permitted plaintiff's resumption of her maiden name but limits his appeal to the financial issues resolved by the judgment. The judgment did not deal with equitable distribution since defendant had previously filed a petition for Chapter 11

---

[1] We cannot overlook defense counsel's repetitive mischaracterization of the record when he refers to defendant's "numerous suicide attempts," and "his attempts to commit suicide on three separate occasions" between October 1994 and March 1995. The record does not support these factual assertions.

protection, and the issue of equitable distribution was left to the Bankruptcy Court.[2]

Defendant failed to appear at the final hearing, asserting that he never received notice of the trial date and that, in any event, he was hospitalized, albeit as a result of his voluntary admission. Thereafter, his application to set aside the judgment was denied as was his motion for reconsideration. We conclude that he failed to establish a basis for relief under *R.* 4:50–1(a) or (f) and, accordingly, we affirm.

To fully appreciate the nature of defendant's conduct regarding the final hearing, we must briefly review some of the background surrounding this matter. The parties were married on August 13, 1961. Four children, all of whom are emancipated, were born of the marriage.[3] Plaintiff, sixty-one, resides in the marital home in Colt's Neck and is unemployed; defendant, sixty-eight, last residing at the McIntosh Inn in East Brunswick, is in the commercial real estate business.

Plaintiff filed a complaint for divorce in 1993. The road leading from the filing of the complaint to the final hearing was long and arduous. From the filing of the complaint until the final judgment was entered, at least fourteen orders were entered against defendant including the issuance of three bench warrants and our denial of defendant's request for interim relief. Orders were necessary to protect against defendant's dissipation of assets as well as to compel defendant to provide discovery and pay support. In addition, plaintiff sought protection from defendant under the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to –33. During the pendency of the action, defendant filed a petition for Chapter 11 protection under the Bankruptcy Act, and the Bankruptcy Court granted a vacation of the automatic stay to

---

[2] We have been advised by defendant's attorney that the bankruptcy court has decided the issue of equitable distribution.

[3] The oldest child was plaintiff's child from a former marriage but was later adopted by defendant.

allow the matrimonial proceeding to move forward on all issues except equitable distribution. Finally, by order of February 10, 1994 and in response to defendant's failure to comply with her prior orders, Judge Cuff, then sitting in the Family Part, struck defendant's pleadings and limited his participation at the final hearing to cross-examination of witnesses.

From the inception of the divorce proceeding, defendant, at various times, was represented by counsel and, at various other times, represented himself. In October 1994, he retained the law offices of Teich, Groh and Frost to represent his interests in the matrimonial case as they had been representing his interests in the bankruptcy matter. Plaintiff had previously moved for relief to reduce support arrears to judgment, to hold defendant in contempt, to incarcerate defendant and for counsel fees. In addition, plaintiff had moved for the appointment of a guardian *ad litem* since defendant, who has a history of depression pre-dating the divorce proceeding, had previously checked himself into a hospital claiming various emotional problems. Apparently, defendant appeared in November for the hearing on motions including the application for the appointment of the guardian *ad litem*.[4] On November 18, 1994, the Family Part judge signed an order a) compelling defendant to continue to pay support and arrears to plaintiff; b) entering a judgment for arrears in favor of plaintiff and against defendant for $39,000; c) holding defendant in contempt of court for "failure to abide by the order of the court as to *pendente lite* support;" d) issuing a bench warrant for defendant's incarceration "on November 29, 1994, subject to a *Federbush*[5] hearing if he fails to pay the judgment amount in this order prior to that time;" and other relief not germane to the issues here. Defendant filed opposition to the application for a guardian *ad litem* and that application was denied. A separate order memorializing the denial of the guardian application also denied counsel

---

[4] A transcript of this hearing was not provided on this appeal.

[5] *Federbush v. Federbush*, 5 *N.J.Super.* 107, 68 A.2d 473 (App.Div.1949).

fees "subject to the November 29, 1994 hearing." The November 29, 1994 hearing was continued at defendant's attorney's request to December 14, 1994. On that date, defendant's attorney appeared, defendant failed to appear and a bench warrant was issued for defendant's arrest, subject to his release upon payment of $76,250, the amount the judge determined to be the full amount of the arrearage. In addition, defense counsel, with "all parties having been served," was granted leave to withdraw as counsel.

According to the affidavit filed by defense counsel in support of her motion to withdraw as counsel, defendant was personally notified of the December 14, 1994 hearing and appointments were scheduled to prepare for the hearing. Defendant failed to keep the appointments or advise counsel of his whereabouts. Subsequent to that hearing, counsel received a trial notice scheduling the matter for January 18, 1995. Counsel later certified that she forwarded a letter enclosing the trial notice and a copy of the order relieving counsel to defendant at the address that he had supplied to counsel. The letter was sent to defendant on December 15, 1995 by both regular and certified mail. The regular mail was never returned and the certified mail was returned as "refused."

Curiously, defendant's certification in support of his motion to vacate the default judgment does not unequivocally deny receipt of notice of the trial date. Defendant states: *"I do not believe that I ever received notice of the trial date for January 19, 1995."* (emphasis added) He states that he was hospitalized at various times from October 1994 through March 1995, specifically from November 3, 1994 to November 5, 1994 for an alleged suicide attempt by a drug overdose; from November 7, 1994 to November 21, 1994 for psychological problems; from December 28, 1994 to March 5, 1995 and again from March 14, 1995 to April 21, 1995 for depression and diabetes. All of these were voluntary admissions. Likewise he asserts that he has been "in a severe depression and was operating in an aberrant fashion from probably sometime on or about the onset of these divorce proceedings, sometime in

1993." This certification was filed on November 28, 1995 in support of his motion to vacate the judgment. It is inconsistent, however, with an important earlier filing.

One year earlier on November 17, 1994 in opposition to the appointment of a guardian *at litem,* defendant certified:

4. Additionally, I have been ill with a foot infection and been laid up in the hospital for approximately the last month and was only recently released. Due to my deteriorating health, I feel that the Court must reexamine my $1,250.00 per week alimony obligation. I simply cannot afford to pay alimony in this amount and wonder if I can afford to pay alimony at all.

5. Since being released from the Raritan Bay Medical Center, Old Bridge Division, I subsequently admitted myself into another hospital for depression. My understanding is that many hospital patients become depressed from being around ill people all the time and, additionally, many medications have been known to cause depression.

Additionally, in support of his opposition to the motion, defendant submitted the certification of Anthony G. Bariglio, a business associate of defendant. That certification stated:

1. I am business associate of the Defendant in the above captioned matter and am fully familiar with the facts set forth in this Certification.

2. Over the past few months I have had numerous conversations with the defendant in regard to certain business transactions. I have found him at all times to be abreast of the situation and to exercise sound business judgment.

3. Additionally, I also visited with the Defendant in the hospital on one occasion so that we could discuss our business dealings face to face. Again, I found Defendant to exercise sound business judgment.

4. Over all, I have found Defendant to be capable and fit for the government of himself and his property and, therefore, do not feel that Defendant is in need of a guardian ad litem.

Defendant, on the one hand, successfully resisted an application for the appointment of a guardian *ad litem* based on his mental acuity and ability to govern his affairs, while shortly thereafter he certified as to his inability to cope with the rigors of litigation.

The dissolution trial was held on January 19, 1995.[6] Defendant failed to appear. After presentation of plaintiff's case, the trial

---

[6] Even though the case was scheduled for January 18, it was not reached on that date; however, it was called and defendant was paged. He did not appear on either January 18 to January 19.

judge made findings and awarded alimony, reduced the accumulated arrearage to judgment, continued the Domestic Violence restraining order, ordered the maintenance of life insurance for the benefit of plaintiff, awarded counsel fees and allowed plaintiff to resume her maiden name.[7] The judgment was entered on February 2, 1995.

Defendant thereafter moved to vacate the judgment pursuant to *R.* 4:50–1(a) and (f).[8] The motion judge denied defendant's application and noted that, while defendant suffered from a diagnosed bi-polar disorder, he was capable of managing his affairs and attending to matters of significance. That conclusion was well supported by the record before the court. Clearly, defendant had been hospitalized during various periods during the pendency of the matrimonial proceeding and during periods when he was due in court for hearings and motions. What is striking about the records presented is that each admission was voluntary and any suggestions of illness, or even suicide, beyond his diagnosed bi-polar disorder, were based on self-serving statements which never formed the basis of a diagnosis other than depression. What is further striking about the record is that the critical absences from court proceedings occurred only in the matrimonial action at a time when defendant was at risk and not in other proceedings such as the bankruptcy proceedings where defendant appeared and fully participated in those proceedings.

We do not deprecate the medical difficulties defendant may be suffering; however, the motion judge concluded that the records before him did not support a view that defendant was incapable of participating in the matrimonial proceeding. We agree with that conclusion and again reiterate defendant's strong opposition to the

---

[7] The financial awards were essentially consistent with the prior *pendente lite* awards.

[8] The motion to vacate was filed in November 1995, returnable on January 6, 1996. No explanation is given as to why defendant waited 10 months to file this motion.

appointment of a guardian *ad litem*, a procedure that would have tested the very issue defendant now complains of. At the time of the guardian *ad litem* application, defendant had already been hospitalized for depression, suffered the same "suicidal ideations" and the same bi-polar disorder. But his treating physician opined that while he has been hospitalized for depression "his prognosis is good provided that he remain in therapy and continue on medication." Despite all of the preexisting medical conditions, defendant vigorously opposed the application.

Defendant was hospitalized at the time the final hearing took place, as he had voluntarily admitted himself. He was not hospitalized at the time the trial notice was issued and forwarded to him at the McIntosh Inn in mid-December 1994.[9] Moreover, no explanation is set forth as to why defendant did not appear at the December 14, 1994 hearing other than the fact that it is consistent with his pattern of avoidance. Again, the critical inquiry is less whether defendant appeared at the January 19, 1995 hearing and his whereabouts that day, as opposed to whether he had notice of the hearing.

Defendant moved for relief from the judgment pursuant to *R.* 4:50–1(a) and (f). The rule provides:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party ... from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; ... or (f) any other reason justifying relief from the operation of the judgment or order.

The motion judge rejected defendant's application for relief and later the motion for reconsideration. The motion judge commented:

---

[9] A letter submitted to the court on defendant's motion for reconsideration from the McIntosh Inn indicates that the McIntosh Inn was storing records of defendant since November 1994. It does not confirm that defendant did not return to the McIntosh Inn after November 1994. More significantly, whether defendant did or did not return to the McIntosh Inn is not the issue; he used the McIntosh Inn as his address and contact point and gave the address to his attorney and others as his residence.

There's an obligation on behalf of a litigant to keep the system apprised of his whereabouts. Every indication that's been provided to me is that at the time of the representation of Ms. Wittenborn to her client and in compliance with the Court's earlier—of Judge D'Amico's order to notice on the trial date, that she did it. And there was nothing to indicate at all on the record that was before Judge D'Amico that adequacy of notice had not been achieved.

And that's what I look at. Was the notice adequate under the circumstances? I cannot, without an incompetency finding, excuse the responsibility of Mr. Fineberg to keep the system aware of his whereabouts. I will not vacate the determination that was made by [me] back in January.

■ The motion to vacate a judgment under either *R.* 4:50–1(a) or (f) "should be granted sparingly, and is addressed to the sound discretion of the trial court, whose determination will be left undisturbed unless it results from a clear abuse of discretion. *Housing Authority of Town of Morristown v. Little,* 135 *N.J.* 274, 283–84, 639 *A.*2d 286 (1994)." Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 4:50 (1998). An application to vacate a default judgment is "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." *Marder v. Realty Construction Co.,* 84 *N.J.Super.* 313, 319, 202 *A.*2d 175 (App.Div.), *aff'd,* 43 *N.J.* 508, 205 *A.*2d 744 (1964). Nevertheless, a default judgment will not be disturbed unless the failure to answer or otherwise appear and defend was excusable under the circumstances. *Id.* at 318, 202 *A.*2d 175.

■ Defendant argues that his alleged impaired competency at the time of his attorney's attempt to notify him of the trial date and his hospitalization during the trial entitle him to relief under *R.* 4:50–1. Plaintiff counters that defendant's successful argument in opposition to the appointment of a guardian *ad litem* should act as an estoppel for his application to raise his alleged mental incompetency as an excuse for relief under *R.* 4:50–1.

When plaintiff made an application to have a guardian *ad litem* appointed on behalf of defendant, he filed certifications in opposition to the application. In support of that defense, defendant supplied the court with certifications sworn to by himself, his business associate and his treating psychiatrist. These certifications were filed to attest to defendant's abilities and to his fitness

"for the government of himself and his property." However, on the motion and again on appeal, defendant argues that his state of mind resulted in his hospitalization which precluded him from attending to the litigation and was thus excusable neglect under *R.* 4:50–1(a) or (f). Defendant agreed to a voluntary commitment at Monmouth Medical Center and was there continuously from January 5 to March 5, 1995.[10] It was during this time that the divorce hearing occurred and judgment was entered by default against defendant.

We again observe that there is nothing in the record which warrants a finding of incompetency, and the motion judge so concluded. Moreover, the position taken by defendant on the motion for reconsideration as to his competency is inconsistent with the position he successfully advocated in November 1994. He is, indeed, precluded from asserting these inconsistent positions by the doctrine of judicial estoppel.

 Judicial estoppel operates to bar a party from asserting a position contrary to and inconsistent with one previously asserted. *Cummings v. Bahr,* 295 *N.J.Super.* 374, 385, 685 *A.2d* 60 (App. Div.1996); *Levin v. Robinson, Wayne & LaSala,* 246 *N.J.Super.* 167, 180, 586 *A.2d* 1348 (Law Div.1990) (observing that "[a] party will not be permitted to play fast and loose with the courts nor to assume a position in one court entirely different or inconsistent with that taken by him in another court or proceeding with reference to the same subject matter."). That principle applies here. Defendant's position asserting a deficiency in his competency contradicts his earlier position. We fully recognize that one's mental condition is fluid and may be constantly changing, yet a careful review of the defendant's medical records demonstrates a

---

[10] Defendant was transferred to Monmouth from Bayshore, which he had voluntarily entered on December 28, 1994. He indicates that he continued his voluntary commitment because of a threat of an involuntary commitment. However, whether he would have been so committed was never tested.

consistency of condition rather than a marked change of condition or competency.

Defendant relies on *Bergen–Eastern Corp. v. Koss,* 178 *N.J.Super.* 42, 427 *A.*2d 1132 (App.Div.1981). Such reliance is misplaced. That case involved a seventy-year old widow with a history of continuing, serious psychiatric problems with several hospitalizations for mental illness who received notice of a tax sale but did not understand or appreciate the significance of the proceeding. Here, we are dealing with a sophisticated businessman who is involved in multi-million dollar transactions, who, according to the record, is maintaining or defending at least fifteen active lawsuits (some of which involve defendant acting *pro se* ), who has previously violated the orders of the Family Part in this litigation and who provides no meaningful explanation as to why he did not respond to numerous notices and hearings previously held.

Defendant suggests that courts should "bend over backwards" to achieve substantial justice where defaults are entered against the infirm. *See, e.g., Novack v. Chait,* 241 *N.J.Super.* 614, 623, 575 *A.*2d 908 (App.Div.1990). While we will bend over backwards in appropriate cases, we will not "break," especially where the conduct of a litigant warrants a different result. Defendant's conduct in this litigation and at the time of the December 14, 1994 hearing and the notice of the trial date does not warrant our intervention under *R.* 4:50–1. That rule requires that courts be indulgent of litigants who deserve such indulgences. Defendant's conduct is beyond that point. Defendant's assertions that he thought he was represented and that he had left the McIntosh Inn and moved elsewhere are hollow. As we noted earlier, defendant supplied the McIntosh Inn as his address; defendant allegedly failed to check his mail and correspondence; defendant's attorney supplied notice to him at the address that he provided; and, defendant failed to communicate with his attorney even after a hearing on a motion which threatened his incarceration. Defendant had an obligation to keep the court and counsel aware of his whereabouts, *cf. In re Nackson,* 221 *N.J.Super.* 187, 198, 534

A.2d 65 (App.Div.1987), *aff'd,* 114 *N.J.* 527, 555 A.2d 1101 (1989), citing *Commonwealth v. Maguigan,* 511 *Pa.* 112, 511 A.2d 1327 (1986) ("[defendant] obligated himself to keep the court informed of his whereabouts and to make himself available at the direction of the court."). Neither plaintiff nor the court need be burdened with his failings.

We are always concerned that the entry of a default judgment deprives a litigant of an opportunity to argue the merits of their case in court, *see, Hartsfield v. Fantini,* 149 *N.J.* 611, 618, 695 A.2d 259 (1997), but the right to present one's case carries with it the commensurate obligation to cooperate with the court, counsel and other litigants. Defendant's conduct regarding notice of the trial date and failure to appear was not aberrational; it was consistent with his past conduct. There are too many orders for enforcement, too many bench warrants and too little cooperation to excuse defendant for his latest default.

Defendant further contends that a plenary hearing was required to test the bona fides of his contentions regarding vacating the judgment. We disagree. All of the relevant material was supplied to the motion judge both at the time of the original application and the motion for reconsideration. The plenary hearing would adduce no further facts or information. *See, e.g., Harrington v. Harrington,* 281 *N.J.Super.* 39, 47, 656 A.2d 456 (App.Div.), *certif. denied,* 142 *N.J.* 455, 663 A.2d 1361 (1995) (noting that "not every factual dispute that arises in the context of matrimonial proceeding triggers the need for a plenary hearing."). We conclude further that a proper consideration of the relevant facts presented could lead to no other conclusion than that reached by the motion judge. *Cf. Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 540, 666 A.2d 146 (1995).

Defendant also challenges the award of counsel fees to plaintiff and complains of certain comments made by the motion judge.

We have carefully considered the record and conclude that defendant's arguments are without merit. *R.* 2:11–3(e)(1)(E).

Affirmed.