**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5394-18T2

S.G.,

    Plaintiff-Respondent,

v.

A.G.,

    Defendant-Appellant.

_____

> Submitted November 16, 2020 – Decided February 1, 2021
>
> Before Judges Fasciale and Rothstadt.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1063-12.
>
> Garth A. Molander, attorney for appellant.
>
> Einhorn, Barbarito, Frost & Botwinick, PC, attorneys for respondent (Matheu D. Nunn and Jessie M. Mills, on the brief).

PER CURIAM

In this post-judgment dissolution matter, defendant A.G.[1] appeals from the Family Part's July 5, 2019 order that granted plaintiff S.G.'s motion to enforce a March 2016 consent order that fixed his spousal support obligation. The July 5, 2019 order also awarded plaintiff counsel fees and denied defendant's cross-motion to (1) vacate the consent order or (2) to hold a plenary hearing as to his capacity to enter into the consent order or as to the issues of "waiver and/or the doctrine of impossibility," or (3) modify his obligation despite the consent order's anti-Lepis provision.[2]

On appeal, defendant argues that the motion judge abused her discretion by not vacating the consent order under Rule 4:50-1 because he "made a prima facia showing that the consent order and or the anti-Lepis provision [was] void . . . due to [his] lack of capacity to contract." He also contends that the alimony established in the consent order was neither fair nor reasonable "under his prevailing extraordinary circumstances." Finally, he challenges the award of attorneys' fees to plaintiff.

We have carefully reviewed the record and for the reason discussed in this opinion, we conclude that we are constrained to remand this matter for further

---

[1] We use initials to protect the parties' privacy interests. See R. 1:38-3(d)(3).

[2] Lepis v. Lepis, 83 N.J. 139, 146 (1980).

consideration by the motion judge as her oral decision failed to refer to significant expert evidence filed in support of defendant's cross-motion.

Defendant's initial alimony obligation was established in the parties' June 18, 2013 dual final judgment of divorce (JOD) that incorporated the terms of agreements they reached through counsel. Under the parties' agreements, defendant was required to pay permanent alimony to plaintiff in the amount of $324,000 per year. The agreements did not contain an anti-Lepis provision or any other provisions addressing a change in circumstances, other than defendant retiring or plaintiff cohabiting in a marriage-like relationship.

At the time the JOD was entered, defendant was a 50% owner of a business and his "gross annual earned income from his business ha[d] been approximately $1,100,000 over the last five years." Plaintiff had not been gainfully employed since 1991, but for the purposes of determining alimony, the parties imputed annual income of $50,000 to her.

For equitable distribution purposes, the parties agreed that defendant's interest in his business had a value of $4,750,000, and plaintiff "was entitled to 29.25%" of that value. After their divorce, on January 15, 2015, defendant sold his interest in his business for $6,750,000 and received periodic payments of the purchase price over several years.

A-5394-18T2

On March 17, 2015, defendant filed a motion to terminate his alimony obligation, alleging that plaintiff was cohabiting with her paramour. That motion was resolved by the parties' entry into the March 2016 consent order that they negotiated through counsel, after they exchanged discovery. The order resolved the cohabitation issue and reduced and placed a time limit on defendant's obligation to pay alimony. Part of the negotiations focused on when defendant's obligation could be terminated due to disability or other "catastrophic physical disability."

The consent order obligated defendant to pay plaintiff alimony of $128,000 in 2016, $425,000 in 2017 and $250,000 in 2018. Defendant was to pay the 2017 and 2018 alimony from the release of funds held in escrow on his behalf following the sale of his interest in his business in 2015. Between 2019 and 2026, the order obligated defendant to pay plaintiff alimony of $148,000 per year, in monthly installments of $12,333.33 on the first day of each month.

The order also contained an anti-Lepis, non-modification provision that barred any change in alimony during 2019–2026 "for any reason whatsoever except for a catastrophic physical disability" that had to be established by certain proofs. No other reason could be relied upon, including "unemployment, decreases or increases in income, appreciation or depreciation of assets, mental

A-5394-18T2

disability, injury, illness, . . . loss of professional license, . . . or changes with respect to . . . [d]efendant's entitlement to receive the funds held in escrow from the sale of his interest in [his business]." Moreover, the provision contained an acknowledgment that the parties had conferred with counsel "regarding his/her respective rights pursuant to Lepis . . . and Crews v. Crews, [164 N.J. 11 (2000)], and . . . knowingly waive[d] any and all rights . . . to seek a modification of alimony" for those years, "regardless of any changes in circumstances which may occur in the future."

Defendant failed to make the direct alimony payments that became due in January 2019. According to defendant's original explanation, he could no longer pay alimony as he was experiencing financial difficulties and had depleted his assets. After initial attempts to settle the dispute failed, plaintiff then filed her motion to enforce the consent order. Defendant responded to the motion and filed his cross-motion to vacate the consent order or, in the alternative, to rescind its anti-Lepis provision, and modify the alimony obligation based on changed circumstances or impossibility, and to schedule a plenary hearing on the issue of his capacity to contract in 2016.

In plaintiff's motion, she requested that the motion judge find defendant in violation of her rights, require him to resume paying alimony and satisfy his

arrears, issue a daily sanction for non-payment, and pay her counsel fees. She also asked for an order to compel defendant to comply with certain discovery demands, including filing an updated case information statement and providing certain documents related to his employment situation.

In his motion's supporting certification, defendant explained in detail certain financial setbacks he experienced in recent years due to his lack of employment, although he made numerous good faith efforts to secure employment, and due to bad investments, supporting his children and himself, and paying alimony. After accounting for these financial circumstances, he was left with only approximately $94,600 from the sale of his business in 2015.

Turning to the events surrounding the March 2016 consent order, defendant explained at that time the parties were engaged in family counseling with a social worker, whom they first began seeing in 2012. The social worker referred defendant to a psychiatrist to assess symptoms of possible bipolar disorder.

Defendant certified that he met with a psychiatrist in 2014, who diagnosed him with bipolar II disorder and prescribed medication. However, he alleged that at that point he was in denial of the diagnosis and its effects and refused to take any medication. He certified that he later saw two different psychiatrists,

6

both of whom diagnosed him with bipolar II disorder and prescribed medication for him.

Defendant claimed that he did not engage in structured therapy at the time of the consent order, and that he did not take medication until November 2016. Defendant certified that his attorney advised him not to consent to an anti-Lepis provision in the consent order, but he ignored the advice. He claimed that he was not fully aware of the consequences of his psychological disorder on his inability to consent and did not inform his attorney that he was suffering from any disorder.

Defendant attached to his certification a March 2019 psychiatric evaluation report by Morton Fridman, M.D. Fridman reviewed documents, including records from defendant's prior treating psychiatrist, interviewed defendant (in both February 2019 and March 2019) and spoke with both his former treating social worker and his business partner. Fridman noted that the social worker observed that defendant engaged in "excessive spending," "grandiose pursuits" and "took a lot of risks."

Defendant's former psychiatrist's November 2016 notes stated that defendant's "pattern of mood changes and behaviors ha[d] been impairing" over the prior year or two. Similarly, Fridman reviewed a letter from defendant's

current psychiatrist that stated defendant experienced "periods of being reckless, irresponsible, grandiose, irritable, exhibiting risky, . . . promiscuous, and hypersexual behavior, and [was] financially irresponsible." Since the psychiatrist began seeing defendant in February 2019, his symptoms continued to reduce due to his treatment regimen that included continued medication.

Fridman concluded that defendant's history was consistent with a diagnosis of bipolar II disorder but found that he may meet the DSM-5 criteria for bipolar I disorder as well because his "episodes appear to have caused marked impairment in his social and occupational functioning." In Fridman's opinion, defendant's bipolar disorder compromised his judgment in the period leading up to the parties' finalizing the consent order and his "state of mind was inconsistent with making an informed, knowledgeable and voluntary consent to the [consent order], nor was he capable of appreciating [its] consequences."

After considering the parties' submissions and oral arguments on July 5, 2019, the motion judge entered the order under appeal and placed her reasons for doing so on the record that day. Addressing the circumstances surrounding the entry of the 2016 consent order, the judge found that the parties were each represented by counsel and were in equal bargaining positions, and because the attorneys exchanged several drafts before the final order, each party had

sufficient time to consider its terms. Since defendant chose not to inform his attorney of his bipolar condition or receive treatment, his argument that he did not have the capacity to contract was "inherently contradictory and self-generated."

The judge also found defendant's assertions were "inconsistent" and "contradictory" because he was able to sell his business, purchase a home, engage in short-term employment and otherwise function in everyday life. Defendant simply had "buyer's remorse," which was insufficient to negate the express terms of the consent order, in light of the State's public policy of enforcing negotiated marital agreements. The judge made no mention of Dr. Fridman's report or his opinion as to defendant's lack of capacity in 2016.

The judge also concluded that defendant supplied insufficient support for his efforts at finding new employment since January 2019, and found that his temporary employment during that time "render[ed his] certification inherently unbelievable" because he worked during a period he stated he was unemployed. Defendant also provided very little documentation supporting job-search efforts, particularly outside his field. She also found deficiencies with defendant's description of how he dissipated the proceeds from the sale of his business, and that he did not provide any proof about his other losses. The judge noted that

as a formerly self-employed obligor, defendant was in a better position to hide income compared with a W-2 employee. As such, defendant failed to establish a prima facie case of changed circumstances.

The judge denied defendant's request to modify his alimony obligation or to schedule a plenary hearing. The judge granted plaintiff's requests to enforce the alimony obligation but denied her requests for discovery because the judge ordered defendant to satisfy the alimony obligation in full. Finally, pursuant to the terms of the consent order, the judge ordered defendant to pay 100% of plaintiff's counsel fees, which were $16,800, as set forth in her attorney's certification of services. This appeal followed.

We begin our review by acknowledging that "New Jersey has long espoused a policy favoring the use of consensual agreements to resolve marital controversies." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999). For that reason, judges should not "unnecessarily or lightly disturb[]" consent agreements that are fair and equitable. Smith v. Smith, 72 N.J. 350, 358 (1977). Courts have the authority to enforce alimony agreements to the extent that they are fair and equitable, and the terms of the agreement should receive continued enforcement, provided that they remain fair and equitable. Lepis, 83 N.J. at 148-49.

On the other hand, alimony orders are subject to modification by trial courts under appropriate circumstances. N.J.S.A. 2A:34-23. Agreements are subject to modification by the trial court where parties are able to demonstrate "changed circumstances." Lepis, 83 N.J. at 146. They are also subject to enforcement of valid anti-Lepis provisions where "the parties . . . with full knowledge of all present and reasonably foreseeable future circumstances bargain for a fixed payment or establish the criteria for payment to the dependent spouse, irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement." Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993).

"Each and every motion to modify an alimony obligation 'rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters.'" Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)).

However, a settlement agreement must be set aside when one party was not competent to voluntarily consent to it. Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005). "[T]he longstanding rule is that 'where there is not the mental capacity to comprehend and understand, there is not the capacity to

make a valid contract.'" Ibid. (quoting Wolkoff v. Villane, 288 N.J. Super. 282, 287 (App. Div. 1996)); see also Peskin v. Peskin, 271 N.J. Super. 261, 276, (App. Div. 1994). A party to a contract possesses the requisite capacity when the party has "the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting . . . [the party's mind must not] be so clouded or perverted by age, disease, or affliction, that he cannot comprehend the business in which he is engaging . . . ." Jennings, 381 N.J. Super. at 227. The party seeking to set aside a settlement agreement generally has the burden of proving his incapacity or incompetence to contract. Ibid.

We have had prior occasions to review a trial judge's decision on a motion to vacate an agreement or order based upon incapacity. Those cases turned on the evidence of incapacity at the time of the agreement rather than when the motion was made. See e.g., Barrie v. Barrie, 154 N.J. Super. 301, 305-06 (App. Div. 1977) (affirming the denial of the plaintiff-wife's motion to either vacate her property settlement agreement under Rule 4:50-1(f) or grant a plenary hearing as to whether the court should rescind the agreement where she included a certification from her psychiatrist that did not address her capacity at the time she entered into an agreement); Fineberg v. Fineberg, 309 N.J. Super. 205, 215-17 (App. Div. 1998) (affirming trial judge's denial of defendant-husband's

motion to set aside a divorce judgment on the grounds that he was hospitalized and did not receive notice of the trial date, because he had previously opposed the wife's motion to appoint a guardian ad litem for him by arguing that he was competent).

Here, the motion judge rejected defendant's factual assertions that he claimed supported a finding that he lacked capacity. In fact, the judge found that those actions—purchasing and then selling a house, investing in a restaurant and "carry[ing] on everyday life"—actually supported her finding that he did not suffer from a debilitating mental illness that impaired his ability to contract. However, she reached that conclusion without any reference to the unrefuted psychiatric opinion provided by Dr. Fridman as to defendant's mental state at the time he entered into the March 2016 consent order.

The judge's only reference to defendant's alleged condition was that "he started treating with two medical providers in or around somewhere between 2012 and right before 2016 and then right before this motion was filed, he seemingly switched to two other treating providers. There's nothing really indicating what happened in 2016, 2017." Yet, Dr. Fridman's comprehensive twenty-six-page report concluded that defendant's "state of mind was inconsistent with making an informed, knowledgeable and voluntary consent to

A-5394-18T2

the March 2016 Order," and defendant was not "capable of appreciating the Orders consequences." The judge provided no reason why she did not accept the doctor's opinion, which would be her right, see Brown v. Brown, 348 N.J. Super. 466, 470 (App. Div. 2002) (explaining a trial judge is free to accept or reject expert testimony), and she did not even mention the doctor's opinion or explain why it did not support a finding of conflicting facts that warranted a plenary hearing. Harrington v. Harrington, 281 N.J. Super. 39 (App. Div. 1995) (emphasizing motion judges cannot resolve material factual disputes upon conflicting affidavits and certifications).

As we are left without any indication if the judge accepted or rejected any portion of the doctor's expert opinion that defendant's actions—including his entry into the consent order—might have been the result of a mental health problem that deprived him of the ability to understand what he was doing at the time,[3] we are constrained to remand this matter for further findings by the motion judge that address Dr. Fridman's report.

---

[3] We reject plaintiff's invitation to us on appeal to assume that the judge concluded Dr. Fridman's report was a net opinion as there is no evidence to support that conclusion. See State v. Townsend, 186 N.J. 473, 494 (2006). A net opinion is one in which the expert does not "give the why and wherefore of his or her opinion," and only provides "a mere conclusion." Ibid.

However, by our remand, we do not suggest any specific outcome of the judge's reconsideration. We only require the judge to specifically address the doctor's opinion as an item of evidence that was submitted for her consideration.

Vacated and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5394-18T2