**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3340-23

J.L.,[1]

    Plaintiff-Respondent,

v.

F.F.-A.,

    Defendant-Appellant.

_____

Submitted October 15, 2025 – Decided November 3, 2025

Before Judges Firko and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2054-21.

F.F.-A., appellant pro se.

Geraldene Sherr Duswalt, attorney for respondent.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the victim in these proceedings. R. 1:38-3(d)(10).

Defendant F.F.-A., self-represented, appeals from the June 20, 2024 order granting plaintiff J.L. sole legal and residential custody, modifying defendant's parenting time, and awarding plaintiff attorney's fees. Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

Defendant and plaintiff were married in December 2017. They share twins, born in January 2019. In April 2022, the parties divorced and entered into a marital settlement agreement (MSA), which was incorporated into their final judgment of divorce (JOD).

The parties agreed to share legal custody, equal primary residential custody, and a parenting time schedule for their children. The MSA, paragraph 3.15, stated that "[i]n the event either party . . . unilaterally deviate[d] from the terms of the parenting time schedule . . . same may constitute a substantial change in circumstances warranting an immediate review." Further, under paragraph 3.2, they agreed "change[d] . . . circumstances" included "the children begin[ning] full-time education" and that the parties were permitted to file a court application in "an emergency." The parties agreed under section 3.21 "that whenever possible," they would "bring issue[s] to a mutually agreed upon mediator before filing a non-emergent application with the [c]ourt."

A-3340-23

In August 2022, the parties attended a mediation session regarding the children's schooling and related issues. In January 2023, following unsuccessful mediation, plaintiff filed a motion for the court to address: parenting time; the children receiving therapy; the appointment of a parenting coordinator; the parties' use of "Our Family Wizard" (Family Wizard);[2] medical care for the children; and designating plaintiff as the parent of primary residence if co-parenting continued to be an issue. Thereafter, the parties again engaged in mediation, attending multiple sessions, and resolved many disputed issues that were mentioned in a consent order the court entered on March 31.

On June 13, plaintiff filed a motion to enforce litigant's rights, alleging defendant was not complying with the MSA and March 31 consent order. Defendant cross-moved to dismiss plaintiff's motion, enforce the MSA, and modify custody and parenting time. On July 21, the court entered an order granting in part and denying in part the parties' requested relief. The court granted plaintiff's requests to unilaterally enroll the children in therapy and for defendant to: engage the newly-appointed parenting coordinator; mutually select a pediatrician; provide plaintiff with the children's location during his

_____

[2] This online tool is also referenced in the record as "My Family Wizard." It is a co-parenting application that allows parents to share messages, calendars, and documents concerning their children.

A-3340-23

parenting time; provide plaintiff updated health and life insurance information for the children; and pay plaintiff's attorney's fees in the amount of $2,330.

On July 25, defendant filed a motion to stay the July 21 order and thereafter appealed. On August 31, the court denied defendant's motion to stay. On November 8, we denied defendant's motion to stay the July 21 order and dismissed his appeal as interlocutory.

On October 26, plaintiff filed another motion to enforce litigant's rights with the court, seeking: defendant to provide proof of life insurance; defendant to engage the parenting coordinator or be sanctioned $50 a day for refusing to follow the court's prior order; to be awarded "sole residential custody of the children" and defendant to have "limited visitation rights" on "alternating weekends from Friday evening to Sunday evening" if he "refuse[d] to co-parent" and comply "with the prior orders"; to conduct the parenting time exchanges at a local police station; a custody evaluation be completed; the children to "start kindergarten in the fall of 2024 in the Cranford Public School [District]"; defendant to provide the children's location during his parenting time; the children's "enroll[ment] in Featherbed Lane for a five[-]day per week program"; defendant's payment of arrears and plaintiff's attorney's fees for filing the motion.

4

On November 13, defendant cross-moved for the court to order plaintiff to supply electronic copies of all motions filed and the addresses used to serve defendant, which the court denied on December 1, as defendant had access to the information and had been properly served.

After defendant's appeal was denied, on January 2, 2024,[3] the court entered an order granting in part and denying in part plaintiff's motion. The court ordered: defendant to engage the parenting coordinator or be sanctioned $50 per day; defendant to inform plaintiff of the children's location during parenting time; the parenting time exchanges to occur at a local police station; defendant to pay plaintiff's attorney's fees arrears and attorney's fees for the October 26 motion; "that the children start kindergarten . . . in the Cranford Public School [District]"; and "that the children be enrolled in Featherbed Lane."[4] Further, the court denied plaintiff's request for sole residential custody and determined that it was "premature" to limit defendant's visitation rights.[5]

---

[3] Although dated December 22, the court entered the order on January 2. We note the signed order is not in the record.

[4] Plaintiff later certified that the Featherbed Lane School did not have enrollment space. Consequently, she enrolled the children in pre-kindergarten at the Trinity Episcopal Day School, "a comparable program," on January 12 after informing defendant and receiving no objection.

[5] We note defendant did not appeal from the January 2 order.

5                                                          A-3340-23

On January 17, 2024, defendant filed a motion titled "final judgment," requesting the court to: find plaintiff violated the MSA, the March 2023 consent order, and the July 21, 2023 order; determine all issues were resolved; award him primary residential custody; compel the children to attend school in the Sayreville School District; rescind prior orders; resume parenting time exchanges pursuant to the MSA; order each party to maintain health insurance for the children per the MSA; and require each party to be responsible for their own attorney's fees. On January 20, defendant also filed a motion to stay the January 2 order. On January 31, plaintiff filed a cross-motion to enforce litigant's rights. Plaintiff requested the court to consider defendant's refusal to follow the court's prior orders as "a substantial change in circumstances resulting in a change of the custodial arrangement so that defendant has parenting time only on alternate weekends."

In March 2024, the court entered an order accompanied by a statement of reasons denying defendant's January 17 and 20 motions and granting in part plaintiff's motion. The court ordered defendant to: demonstrate proof of life insurance; engage the previously-ordered parenting coordinator; conduct the parenting time exchanges at a local police station; bring the children to school; not interfere with plaintiff's parenting time; be sanctioned $50 a day for failing

6

to engage the parenting coordinator; and to pay the attorney's fees arrears owed in the amount of $4,945. The court also ordered: the appointment of a Guardian Ad Litem (GAL) pursuant to Rule 5:8B(c), based on concerns for the children's welfare; the "parties to sign up for . . . 'Family Wizard'"; and that if defendant continued to not comply with the court's orders, it would find "a change of circumstances relat[ed] to custody."

The court's statement of reasons noted plaintiff had to file multiple motions for relief because of "defendant's non-compliance." It emphasized the children were "properly enrolled in Trinity Episcopal Day School," they must be brought to school, and defendant was on notice that failing "to do so . . . [would be] a significant change in circumstances that [wa]s not in the best of interests of the[] children." Specifically, the court provided that "[p]laintiff may file a motion to change custody should [d]efendant fail to bring the children to school."

On March 21, plaintiff moved for sole legal and residential custody and to modify defendant's parenting time.[6] On March 29, defendant filed an order to show cause (OTSC) seeking the court to reconsider its January 2 and March 1

---

[6] We note the motion is not in the record, but the court referenced it in a later order.

orders.  Defendant requested the court:  reevaluate its orders to comport with the MSA and March 2023 consent order; not impose sanctions and further financial burdens, such as requiring the parties' use of Family Wizard; and address his concerns of racial bias and "racial dynamics" implicated by the prior ordered relief.  On April 2, 2024, the court denied defendant's application, finding no imminent or irreparable harm and evidence supporting racial discrimination, referencing its March 1 order.  On April 6, defendant filed an emergent appeal to stay the March 1 order, which we denied.

On April 18, the court entered a final restraining order (FRO) in favor of plaintiff and denied defendant's FRO application.  The FRO also required the parties to only communicate using Family Wizard.

Between February 8 and July 31, Trinity Episcopal Day School provided multiple letters expressing concern about the children's:  attendance; late arrival; aggressive behavior; and academic, emotional, and social deficiencies.  The school reported that the parental situation was "uncomfortable," as defendant communicated dissatisfaction with the school and alleged the full-day schooling disrupted his parenting time and "[wa]s discriminatory[,] showing a pattern of racism and homophobia."

On June 20, the court granted in part plaintiff's motion. It found a "substantial change in circumstances" and ordered: plaintiff to have sole legal and residential custody, permitting her to make all health, education, and welfare decisions for the children; a modification of defendant's parenting time to "alternate weekends only, from Friday evening at 7 p.m. to Sunday evening at 7 p.m., with pick up and drop off . . . [continuing] at the Cranford Police Department"; defendant's arrears of $12,950 for plaintiff's attorney's fees, tuition, and sanctions be reduced to a judgment; the appointment of a court-selected GAL; the parties to submit full financial documentation for the recalculation of child support "to be collected through wage garnishment" by probation; and defendant to pay plaintiff's attorney's fees for filing the motion.

The court specifically found defendant was on notice that his failure to abide by the court's March 1, 2024 order would constitute a change of circumstances warranting a custody modification. It explained that defendant "ha[d] exhibited nothing but bad faith since the commencement of this case and ha[d] ignored all [o]rders issued." The court reasoned it had warned defendant that not taking the children to school "during his parenting time" would be deemed "a significant change in circumstances" based on "the best interests of the parties' children." Regarding plaintiff's request for sole legal and residential

9

custody and to modify defendant's parenting time, the court found the "matter [wa]s . . . ripe to award sole legal and residential custody to . . . [p]laintiff." The court determined it was necessary for plaintiff to become the sole decision-maker because defendant continued to violate the ordered custody arrangement. Thereafter, on June 27, defendant appealed the June 20 order.[7]

On July 2, plaintiff filed an emergent OTSC seeking defendant's new address, which defendant opposed, arguing he was enrolling in the Address Confidentiality Program (ACP), N.J.S.A. 47:4-1 to -6. On July 3, the court granted in part plaintiff's application, finding defendant was not a victim under the ACP and ordering defendant to provide the residential address where he exercised parenting time, or parenting time would be halted.[8]

On September 23, plaintiff filed another enforcement motion due to defendant's failure to comply with the court's prior orders. On October 25, the court granted in part her motion, ordering defendant to: submit financial information to modify child support; pay his financial contribution for school,

---

[7] Defendant filed an amended notice of appeal on July 23.

[8] On September 12, we denied defendant's motion to stay the court's order pending appeal. In December, we denied defendant's motion for reconsideration.

A-3340-23

summer programs, and before and after-school care costs; be suspended from exercising parenting time for withholding his new address and refusing to use Family Wizard; sign the children's passport documents pursuant to the MSA;[9] engage the court-appointed GAL; and pay arrears of attorney's fees of $15,422.[10]

On appeal, defendant contends the court erred by: (1) modifying custody without a showing of a substantial change in circumstances; (2) failing to enforce the MSA's mandatory mediation provision; (3) causing irreparable harm to the children and violating defendant's fundamental rights; (4) issuing orders without jurisdiction; (5) permitting plaintiff to engage in inappropriate "machinations by utilizing the trial court to the detriment of the children."

---

[9] We note the MSA, paragraph 3.8, stated that the parties "agree[d] to execute whatever documentation is necessary to allow the traveling parent to travel with the child[ren], including but not limited to, passports." The March 31, 2023 consent order deferred "the issue of obtaining the children's passports, including completing the children's passport applications," to the parenting coordinator.

[10] Defendant did not appeal the court's October 2024 order. While defendant argues "all . . . court orders that deviate from the MSA" should be vacated, we have only considered issues raised regarding the court's June 20, 2024 order. See R. 2:5-1(f)(3)(A) (stating that a notice of appeal "shall designate the judgment, decision, action or rule, or part thereof appealed from"); see also, e.g., Nielsen v. Wal-Mart Store No. 2171, 429 N.J. Super. 251, 256 n.3 (App. Div. 2013) (stating appellant did not preserve an issue for review because it did not identify the order in its notice of appeal).

A-3340-23

## II.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412); see also Hand v. Hand, 391 N.J. Super. 102, 111 (App. Div. 2007) (stating that because of Family Part judges "special expertise in family matters, we do not second-guess their findings and the exercise of their sound discretion"). "We review questions of law, including the issue of statutory interpretation, de novo." Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

A decision concerning custody and parenting time rests in "the sound discretion of the trial courts." Pascale v. Pascale, 140 N.J. 583, 611 (1995). "We defer to the trial judge whether a plenary hearing must be scheduled." Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012); see also Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (stating that we review a judge's decision on a motion to modify custody without conducting a plenary hearing for abuse of discretion). Similarly, in "reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the

A-3340-23

trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby, 427 N.J. Super. at 116).

"[I]n custody cases, it is well settled that the court's primary consideration is the best interests of the children." A.J. v. R.J., 461 N.J. Super. 173, 181 (App. Div. 2019) (quoting Hand, 391 N.J. Super. at 105). "A party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children." Hand, 391 N.J. Super. at 105. "Where there is already a judgment or an agreement affecting custody in place, it is presumed it 'embodies a best interests determination' and should be modified only where there is a 'showing [of] changed circumstances which would affect the welfare of the child[].'" A.J., 461 N.J. Super. at 182 (first alteration in original) (quoting Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993)).

"A party seeking modification of a judgment, incorporating a [settlement agreement] regarding custody or visitation, must meet the burden of showing changed circumstances and that the agreement is now not in the best interest of a child." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017) (quoting Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003)). To determine whether the requisite changed circumstances exist, the court must consider the circumstances that existed at the time the current order was entered. See Beck

v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990); see also Donnelly v. Donnelly, 405 N.J. Super. 117, 127-29 (App. Div. 2009).

Indeed, "not every factual dispute that arises in the context of matrimonial proceeding[s] triggers the need for a plenary hearing." Fineberg v. Fineberg, 309 N.J. Super. 205, 218 (App. Div. 1998) (quoting Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995)). "[A] plenary hearing is only required if there is a genuine, material[,] and legitimate factual dispute." Segal v. Lynch, 211 N.J. 230, 264-65 (2012).

III.

Defendant contends the court erred in modifying the parties' shared custody and parenting time agreement because there was no substantial showing of a change in circumstances. He maintains the court wrongly granted plaintiff sole legal and residential custody based on his "alleged non-compliance," which did not warrant changing the prior agreement. He posits reversal is mandated, as the court did not find him to be an unfit parent or that his actions were adverse to the children. The record establishes defendant's contentions lack merit.

The court's finding of a substantial change in circumstances based on defendant's repeated failure to abide by the court's orders to take the children to school and other deleterious conduct is amply supported. The March 2024 court

14

order specifically stated there was "no question . . . [d]efendant ha[d] failed or refused to comply with" the court's prior orders. After finding defendant failed to bring the children to school, the court explained that it had provided "notice to . . . [d]efendant" that if he continuously failed "to bring the children to school," plaintiff would be permitted to "file a motion to change custody." Notably, the court's January and March orders required defendant to bring the children to school, which was indisputably in their children's best interests. The school's letters irrefutably supported that the children were negatively impacted by inconsistently attending school.

Further, it is undisputed that pursuant to the MSA, paragraph 3.15, the parties agreed that if "either . . . unilaterally deviate[d] from the terms of the parenting time schedule . . . or fail[ed] to return the children in accordance with the schedule" that "same may constitute a substantial change in circumstances." In the present case, the court was intimately familiar with defendant's non-compliance, as it had presided over the parties' numerous motions and applications since entering the April 2022 JOD. Defendant's argument that the court's failure to find him unfit to parent warrants reversal is unsupported because defendant's actions clearly were against the children's best interests and disrupted their education and emotional development. See Harrington, 281 N.J.

Super. at 48 (stating a plenary hearing is not always required (citing Lepis v. Lepis, 83 N.J. 139, 159 (1980))). Therefore, we discern no error in the court's custody and parenting time modification, as sufficient undisputed credible evidence supports its decision that a substantial change in circumstances existed.

Defendant also argues the court failed to act in the children's best interests, and his alleged "non-compliance stemmed from his objections to unilateral changes imposed by [plaintiff]" and "his genuine concern for the children's welfare." The record demonstrates that defendant repeatedly ignored the court's orders and acted against the children's well-being. Specifically, defendant refused to abide by the court's orders to: engage the parenting coordinator, use Family Wizard, disclose vital information in the children's best interests, and participate in essential health decisions for the children—like mutually selecting a pediatrician. Defendant's actions plainly bespeak of a disregard for his children's health, safety, and welfare. The court appropriately addressed each application the parties filed, provided defendant an opportunity to be heard, and acted to ensure the children's best interests.

Defendant's argument that the court erroneously ignored the MSA's mandatory mediation provision is also contradicted by the record. While the MSA required the parties to participate in mediation to resolve custody and

parenting time issues, as the court correctly observed, the parties attended multiple mediation sessions and continued to have unresolved disputes related to their children. Relevantly, the MSA permitted either party to file a motion for an emergent reason. The court appropriately addressed the motions that primarily surrounded the children's immediate best interests.

Finally, we reject defendant's contentions that the court issued orders without jurisdiction and permitted plaintiff to utilize the court "as a tool" for her sole interests. The trial court "has continuing jurisdiction to enforce judgments and orders notwithstanding that they are being challenged on appeal." McNair v. McNair, 332 N.J. Super. 195, 199 (App. Div. 2000). In the present case, the court retained jurisdiction to enforce its orders, as we denied his appeals to stay enforcement, and defendant did not file a direct appeal from the earlier January and March 2024 final orders. See R. 2:9-1(a)(7) (stating the court "shall have continuing jurisdiction to enforce judgments and orders pursuant to R[ule] 1:10 and as otherwise provided"). Regarding defendant's contention that plaintiff engaged in inappropriate court "machinations," he cites to no credible "misleading information" she provided to the court. Indeed, the court exercised strong judicial restraint by continuing to order defendant's compliance with its orders to maintain his parental relationship with the children, even though

defendant refused to comply with multiple court orders entered in the children's best interests.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3340-23